People of the State of Illinois, Plaintiff-in-Error, v. Helen Jones and Willard Jones, Defendants-in-Error.

People of the State of Illinois, Plaintiff-in-Error, v. Willard Jones, Defendant-in-Error.

Gen. Nos. 47,505, 47,506.

First District, Third Division.
December 29, 1958.
Rehearing denied January 12, 1959.
Released for publication January 22, 1959.

[REDACTED]

Benjamin S. Adamowski, State's Attorney (Francis X. Riley, Edwin A. Strugala, Assistant State's Attorneys, of counsel) for plaintiff-in-error.

William C. Starke and Howard T. Savage, of Chicago, for defendants-in-error.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Two writs of error to the Criminal Court of Cook County prosecuted by the People of the State of Illinois and here consolidated for hearing present for review the records and orders of the Criminal Court entered November 1, 1957 quashing two separate indictments charging defendants in error jointly in Gen. No. 47,505, and defendant in error Willard Jones individually in

case No. 47,506, with unlawful possession of certain narcotic drugs, in violation of sections 2 and 23 of the Uniform Narcotic Drug Act of 1935, as amended (Ill. Rev. Stat. 1955, ch. 38, div. I, Criminal Code, secs. 192.2 and 192.23), which deal with the unlawful possession of narcotic drugs and prescribe the punishment therefor.

It appears that in the March term 1957 the grand jury of the Criminal Court of Cook County returned a true bill against Helen and Willard Jones charging them with unlawfully, wilfully and knowingly possessing and having under their control on December 10, 1956 in Cook County a "large amount, to-wit: thirteen packages (the exact quantity of which is unknown to said Grand Jurors) of a certain narcotic drug, to-wit: opium, that is to say, heroin, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois." The same grand jury also returned a true bill against Willard Jones charging him with unlawfully, wilfully and knowingly possessing large quantities of opium and cannabis, sometimes called marijuana, contrary to the statute. The true bills were endorsed by the foreman of the grand jury and designated the witnesses who appeared before that inquisitorial body as Police Officers George Sims and James Lannon.

Thereafter, following pleas of not guilty, defendants filed their motion to quash both indictments, together with an affidavit in support of their motion signed by their attorney and sworn to by both defendants, in which it was alleged in substance that on December 10, 1956 a search warrant issued in cause No. 56 MC 50 321 in the Municipal Court of Chicago authorizing police officers of the city to search the third floor apartment on the south side of the building known as 5108 Kimbark Avenue in Chicago, and commanding the officers to bring before the court a narcotic drug known as heroin, the property of Curtis Jones; and

65

that on the same day in cause No. 56 MC 50 331 in the same court another search warrant issued authorizing city police officers to search the third floor apartment on the south side of the building known as 4656 South Ellis Avenue in Chicago and likewise instructing the officers to bring before the court a narcotic drug known as heroin, also the property of Curtis Jones; that the police officers executed the search warrants, seized a quantity of heroin and returned it to the Municipal Court of Chicago, in addition to a quantity of marijuana; that as a result of these searches and seizures defendants Helen and Willard Jones, owners of both premises, were arrested, and thereafter, upon informations filed by the State's attorney, were prosecuted in the Municipal Court for unlawful possession of the narcotics seized.

In their motion to quash these indictments defendants alleged that they were arraigned in the Municipal Court, pleaded not guilty and were tried, the trial commencing February 27, 1957; that they moved to quash the search warrants, and to suppress the evidence seized thereunder and to be used against them; that the court sustained their motion to quash and to suppress the evidence; and that thereupon the State's attorney on March 27, 1957 declined to prosecute further; instead, he moved for, and the court entered, a *nolle prosequi* to each of the informations.

Immediately following the adverse rulings in the proceedings in the Municipal Court, the State's attorney appeared before the grand jurors in the Criminal Court of Cook County and presented to them the evidence secured under the same search warrants quashed by the Municipal Court and suppressed by that court, as well as the testimony of the same police officers who made the search and seizure. At the conclusion of the State's attorney's presentation, the grand jurors returned the indictments here under consideration. In the Criminal Court both defendants entered pleas of

66

not guilty and filed their motions to quash both indictments. Attached as exhibits to their motion in the Criminal Court were their motions in the Municipal Court to quash the search warrants in question, the order sustaining their motions, as well as the complaints for search warrants issued by the Municipal Court, the informations upon which defendants were brought to trial, and the official memorandums of half sheets of the Municipal Court in the Municipal Court proceedings.

It appears that upon the hearing of defendants' motion to quash the search warrants and suppress the evidence in the Municipal Court, a transcript of which was attached as an exhibit to the People's answer, Officers George Sims and James Lannon were called as witnesses for the People and in substance testified that they and other officers participated in the search and seizure, that they executed the search warrants and made the arrests in the two south-side buildings. The trial judge held the action of the Municipal Court in quashing the search warrants to be res judicata and binding on the Criminal Court, and the testimony and evidence before the Criminal Court to be incompetent.

As ground for reversal it is first urged by the People that the searches and seizures were reasonable and therefore constitutional because conducted under then valid search warrants. The validity of the warrants is not here for review; the Municipal Court held them to be invalid, and we must regard its order as final.

It is next contended that entry of the *nolle prosequis* in the Municipal Court did not bar prosecution for the same offenses in the Criminal Court; that recourse by the prosecution to a court of concurrent jurisdiction did not effect a change of venue in favor of the People in violation of law; and that the entry of the orders quashing the search warrants and sup-

pressing the evidence in the Municipal Court "neither enjoined the criminal court from determining anew the question of illegal search and seizure, either upon a motion to suppress or upon a motion to quash, on the ground of res judicata, nor proscribe introduction of the evidence in question to and its consideration by the grand jury." It was held in People v. Watson, 394 Ill. 177 (cert. denied 329 U. S. 769), that a *nolle prosequi* is not a final disposition of a case and if entered before jeopardy is attached, i. e., before the accused has been arraigned and a jury impaneled and sworn, it does not operate as an acquittal so as to prevent a subsequent prosecution for the same offense; but whether the same evidence obtained through the illegal search and seizure in the Municipal Court proceedings and the testimony of the same officers who made the search and seizure can be used in procuring indictments in the Criminal Court after a *nolle prosequi* has been requested by the People and granted, presents a different question and constitutes the principal issue in this proceeding.

██ In People v. Moore, 410 Ill. 241, an order had been entered by a county court in a criminal proceeding against defendant holding a search warrant void and suppressing the use of property taken under color and authority of the warrant, and ordering the return of the property to the owners. On appeal the Supreme Court held that the State might appeal from that portion of the order directing the return of the property, since that portion of the order touched a different subject matter and was a judgment in a proceeding *in rem*. But with respect to that portion of the order of the county court holding the search warrant void and suppressing the use of the property taken thereunder as evidence in the case, the court stated that it "is certainly incident to the criminal proceeding, and in any subsequent trial of the criminal case none of said property may be used as evidence against the de-

fendants. That part of the order clearly pertains to a criminal proceeding and under the law of Illinois the State may not appeal from the order so far as it merely suppresses the search warrant." It is conceded that the Municipal Court and the Criminal Court possess concurrent jurisdiction to try defendants for the offenses charged against them, both in the indictments in the instant case and the informations in the Municipal Court. The indictments and the informations were laid and drawn under the same Illinois statute. Thus, under the ruling in the Moore case, the People, for the purpose of beginning a criminal prosecution against defendants on the same criminal charges, cannot submit to the grand jury of the Criminal Court evidence previously suppressed by the Municipal Court, since the two courts have concurrent jurisdiction in the same State.

In the recent (1956) case of Rea v. United States, 350 U. S. 214, petitioner for certiorari had been indicted for unlawful acquisition of marijuana in violation of a Federal statute on the basis of evidence seized under a Federal search warrant. Subsequently, on petitioner's motion, the United States District Court suppressed the search warrant and, on the Government's later motion, dismissed the indictment. Thereafter he was charged in a State court with possession of marijuana in violation of State law. Alleging that the evidence suppressed in the Federal Court was the basis of the State charge, petitioner moved in a Federal Court for an order enjoining the Federal agent who had seized the evidence from transferring it to State authorities or testifying with respect thereto in the State courts. On petitioner's appeal, the case was brought to the United States Supreme Court, which viewed the problem not as a constitutional question but as one concerning the court's supervisory powers over Federal law enforcement agencies. The court held that the injunction should have been granted for the reason

that the Federal agent was obliged to obey Federal rules, that he was not at liberty to "flout them and use the fruits of his unlawful act either in federal or state proceedings." We think that the circumstances in the instant proceeding are even stronger for the application of the rule of the Rea case than those of the Rea proceeding. Here the police officers appeared before a grand jury organized by a court situated in the same county as the Municipal Court; in the Criminal Court the officers produced evidence which they had obtained by means which had already been judicially determined by the Municipal Court to have been unlawfully obtained. The evidence in the instant proceeding was not presented to a court of a different State or to a court of different jurisdiction in the same State, but to a court having equal jurisdiction with that of the court which had declared the acts of the officers unlawful.

In Silverthorne Lumber Co. v. United States, 251 U. S. 385, books, documents and papers of the Silverthorne Lumber Company had been seized unlawfully and with the aid and color of an invalid subpoena. The trial court subsequently ordered the originals to be returned, and impounded photographs and copies of the material papers. Subpoenas to produce the originals were then served, and on the refusal of plaintiffs in error to produce them, the court ordered that the subpoenas be complied with, although it had found that all the papers had been seized in violation of the parties' constitutional rights. It was the refusal to obey this order that constituted the contempt alleged. In the reviewing court the Government, while in form repudiating and condemning the illegal seizure, sought to maintain its right to avail itself of the knowledge obtained by means which otherwise it would not have had. The United States Supreme Court held that plaintiffs in error were not required to comply with the grand jury subpoenas, and Mr. Justice Holmes, speak-

ing for the court, said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." That case supports the rule that prosecutors in a criminal case shall not have two opportunities to avail themselves of the fruits of unlawful acts.

Defendants in error also argue that the ruling of the Municipal Court in quashing the search warrants is res judicata and in support of their proposition cite two cases involving the same parties and disposed of on the same day, Steele v. United States No. 1, 267 U. S. 498, and Steele v. United States No. 2, 267 U. S. 505. In the first of these cases the trial court upheld the sufficiency of a search warrant authorizing search for and seizure of evidence in relation to a violation of the Prohibition Law where the defendant had moved to vacate a judgment of conviction, alleging that the search warrant violated the Fourth Amendment to the United States Constitution. In the second case defendant raised the question, on appeal to the United States Supreme Court, of the validity of the same warrant and, in consequence, of the unlawfulness of the search of the property involved in the first case. In answer to this contention the Supreme Court observed: "It should first be said that Steele is not in a position to raise this question. He might have raised it in the preceding case, but he did not do so, and did not assign error on account of it in his appeal to this Court. The refusal to vacate the search warrant and to return the liquor seized was a final decree. The question is therefore *res judicata* as against him." It would logically follow that if an order overruling a motion to suppress evidence in one criminal case is res judicata so that the defendant cannot raise the question of the unlawful seizure of the same evidence in a second criminal case against him with reference to the same evidence, then the State cannot present,

71

in a second criminal proceeding, evidence suppressed in the first criminal proceeding brought against defendants in the Municipal Court.

The course of action followed in the instant proceeding, if condoned, would, in effect, afford prosecutors in a criminal case a second opportunity to test the validity of evidence which another court, of concurrent jurisdiction in the same county and State, had already decreed to be invalid. Thus the State's attorney, in practice, would be in the position of securing a review by another court in the same county and State, of the same venue, and of no greater or different jurisdiction, and would also have the additional advantage of obtaining a change of venue, where none is provided by statute.

For the reasons indicated the orders of the Criminal Court in the consolidated cases, quashing the indictments, are affirmed.

Orders affirmed.

BRYANT and BURKE, JJ., concur.