(No. 31869.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* GREGORY MOORE *et al.,* Appellees.

*Opinion filed November 27, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, and AUSTIN LEWIS, State's Attorney, of Edwardsville, (WILLIAM C. WINES, HAROLD G. TALLEY, RAYMOND S. SARNOW, and JAMES C. MURRAY, of counsel,) for appellant.

A. M. FITZGERALD, and WALTER T. DAY, both of Springfield, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is an appeal by the State of Illinois from an order of the county court of Madison County granting the defendants' motion (1) to suppress the use as evidence, in a pending criminal prosecution, of certain property seized in a raid by the State police on May 12, 1950, under a search warrant, and (2) ordering the restoration to the defendants of all the property seized, including money in the amount of $18,000.

The facts material to this appeal are undisputed and may be stated in sequence of time as follows:

May 12, 1950, on complaint sworn to by an investigator for the State Bureau of Criminal Identification and Investigation, Henry F. Beneze, a justice of the peace in Madison County, issued a search warrant under section 2

of division VIII of the Criminal Code, (Ill. Rev. Stat. 1949, chap. 38, par. 692,) directing a search of the Hyde Park Club. The search warrant was given to constable Harold Beneze, who, accompanied by between thirty and fifty State highway police, went to the city of Venice, arriving at the premises about three o'clock in the afternoon of May 12, 1950. The constable served the search warrant upon the defendant Moore by handing it to him and offering to read it, but Moore said reading it was not necessary. The State highway police proceeded to take possession of all the chattel property here in question, including equipment, furniture, tables and other related items, which, *per se*, have no gambling character, and, in addition, about $18,000 in money. A return of the search warrant was signed by the constable, and returned to the justice of the peace.

May 25, 1950, a criminal information was filed in the county court, charging the defendants, under section 1 of the act prohibiting book-making, (Ill. Rev. Stat. 1949, chap. 38, par. 336,) with being the owners and occupants, on May 12, 1950, of a certain building and keeping and maintaining therein as owners a certain book for the purpose of unlawfully recording bets on the results of horse races, contrary to the statute.

On the same day that the criminal information was filed a petition was filed by the State's Attorney and the Attorney General, jointly, in the same cause, alleging that said money was contraband and should be declared to be such by the court and the State's Attorney be authorized to turn over said money, to be disposed of in accordance with sections 3, 4 and 5 of the act relating to fees of State's Attorneys, (Ill. Rev. Stat. 1949, chap. 53, pars. 18a, 19 and 20,) to the school fund of the county, and that the illegal gaming apparatus, equipment and articles, as soon as they had served their purpose as evidence in the prosecution, should be confiscated, burned or otherwise destroyed,

as provided in section 7 of division VIII of the Criminal Code. Ill. Rev. Stat. 1949, chap. 38, par. 697.

On May 29, 1950, an order of the county court was entered in the matter of the petition for confiscation and disposition of said property, showing that all the defendants were present by their attorneys and represented to the court that the defendants Moore, Calcaterra, Conner and Quinn are the owners of said money, gaming apparatus, equipment and articles described in the petition and demanded a hearing upon the merits of said petition, and the court ordered that the gaming apparatus, equipment and articles in said petition described be impounded and held and kept by the Illinois State highway police until the further order of the court, and that the money be impounded and held and safely kept by the State's Attorney until the further order of the court, and that the defendants file answer to the petition on or before June 15, 1950.

On June 8, 1950, defendants Moore and Calcaterra filed answer to the petition for confiscation by their attorney and denied that the money was contraband or subject to confiscation and denied that it had any evidentiary force or value and that said defendants were immediately entitled to said money.

On the same day, said defendants filed a petition for the return of the money, averring that said money is not of the obnoxious class of property which the law condemns but is of the harmless and moral class that cannot be condemned or destroyed by the State under any statute and is not contraband.

On September 8, 1950, defendants filed motion to suppress the search warrant and all evidence secured thereunder, and that all the property be returned to the owners, Moore and Calcaterra.

The criminal information was set for hearing on September 11, 1950, and has never been heard, but evidence

was heard on the defendants' motion to suppress the search warrant and for a return of the property, and on September 27, 1950, an order was entered by the county court allowing said motion and the money and articles seized on May 12, 1950, were ordered returned to the rightful owners as alleged in the petition. The record does not show any actual hearing on the petition of the defendants filed June 8 for the return of said money, but the order of the court above mentioned evidently refers to that petition because Moore and Calcaterra were not named as the owners of the money in any other petition appearing in the record. Afterwards a motion was filed by the State to vacate and set aside the order, which is immaterial to this appeal, and later an appeal was perfected by the State to this court.

The State has appealed directly to this court on the theory that the judgment appealed from is final, is civil and not criminal, and that the defendants have raised constitutional questions under the law of search and seizure, and that the State has a financial interest in the $18,000 alleged to be contraband and has a right to directly appeal to this court under the statute. The defendants argue that this court has no jurisdiction; that this is a criminal case and the order is not final and appealable, and also argue that money, as such, can never be considered contraband. The defendants also filed a motion in this court to dismiss the appeal, which was taken with the case. The points therein contained were argued in the briefs, and, because of the importance of the case, we are inclined to consider the cause on the merits, if jurisdiction to hear the cause at all is with this court.

Reviewing the above record, it is obvious that both parties are interested in this appeal primarily because of the intrinsic value of the money, and not because of the use of the money as evidence in the trial of the pending criminal case. Such inference is material only to the extent

that it aids the court in determining whether the order appealed from essentially concerns a property right rather than a criminal proceeding.

The jurisdictional question depends upon whether the judgment on the motion to suppress evidence and to return the property was final in character and was a civil rather than a criminal order.

The order of the county court holding the search warrant void and suppressing the use of the property taken thereunder as evidence in the case is certainly incident to the criminal proceeding, and in any subsequent trial of the criminal case none of said property may be used as evidence against the defendants. That part of the order clearly pertains to a criminal proceeding and under the law of Illinois the State may not appeal from the order so far as it merely suppresses the search warrant.

It is generally recognized that under our established practice in criminal cases, a claim that the court erred in instructing the jury as to the law, or that the jury disregarded the evidence and erroneously acquitted, does not give the State the right of appeal, however great may be the feeling of a miscarriage of justice.

The only exception is found in section 17 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1949, chap. 38, par. 747,) which states that the People may sue out writs of error to review any order or judgment quashing or setting aside an indictment or information, but otherwise in no criminal case shall the People be allowed a new trial.

The above rule, however, does not necessarily bar the right of the State to appeal, if the contention of the State is correct that, regardless of the validity of the search, and even if on a subsequent trial the defendants are acquitted, still defendants have no right to have the property returned to them. This position of the State is under its claim that all the property in question is contraband and not capable of an ownership that the law will recognize.

To hold that such claim vests in the State the right to appeal does not require us to first hold that the property in question is actually contraband, but the sole preliminary question is as to the jurisdiction to determine whether the property is contraband. We believe the position of the State is sound if it be assumed that the property in question is contraband. If property is actually contraband no one can assert a legal ownership or right to possession that will be respected by any court.

It is stated in 17 C.J.S., page 289, in defining contraband: "The term has been held to apply to such articles as cannot be owned or possessed legally, or are such as are capable of use only in the commission of crime."

In 47 Am. Jur., sec. 51, page 531, it is said in reference to contraband articles: "An owner of property has no vested or constitutional right to use or allow the use of such property for purposes injurious to the public health or morals. The State has the right in the exercise of its police power to provide for the seizure and destruction of property so used, or intended to be so used, without giving the custodian thereof notice or an opportunity to be heard. This rule has been applied to such articles as gambling instruments in their nature incapable of use for any other purpose, intoxicating liquors held contrary to law, instrumentalities used in the unlawful taking of fish and game, and unfit food exposed for sale contrary to law."

In *Frost* v. *People,* 193 Ill. 635, in discussing the constitutional right to destroy gaming implements and apparatus we said (p. 640): "The legislature have determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provision."

The claim of the State that the property is contraband gives it the right to have that claim determined by this court, for otherwise it would be deprived of its right to confiscate and destroy the property, if the property, in fact, is actually contraband. This right was decided by the trial court adversely to the State's claim in the second part of the order wherein the property was ordered returned to the rightful owners.

The claim of the defendants to the right of possession of the property and to have the property returned to them is entirely distinct from the right of the State to use the property as evidence in the criminal trial.

The question of right of possession is usually termed a proceeding *in rem,* notwithstanding the right to use such property as evidence in the criminal case is incident to a criminal proceeding and not appealable by the State.

We believe this conclusion is sound in reason and is also supported by the decided cases. In *Glennon* v. *Britton,* 155 Ill. 232, we considered the validity of the destruction of two crap tables under an order of a justice of the peace directing said tables to be destroyed as gambling equipment, in a case where they had been procured under a search warrant issued by the justice of the peace. The contention was made that the taking and the destruction was unlawful and that it deprived the owner of his property without due process of law, but, in affirming the rightfulness of the destruction of the property, we said (p. 244) : "Statutes of the character of those in question are enacted upon the theory that the proceedings shall be against the thing or *in rem,* and the State and Federal reports abound in decided cases in which laws of this kind have been held constitutional and valid, where no service was had or contemplated other than that upon or against the offending thing and the person in whose possession it is found."

In *Kirkland* v. *State of Arkansas,* reported in 65 L.R.A. 78, it was contended, under a statute that permitted the

destruction of liquors kept for sale contrary to the law, in any prohibited district, that a proceeding to procure an order of the court destroying the liquor was a criminal case requiring proof beyond a reasonable doubt, but the court held that it was a proceeding *in rem* and involved only the title to the property, like other questions in civil causes, and that the issues would be decided upon the preponderance of the evidence. The opinion quoted from *United States* v. *LaVengeance,* 3 Dall. 297, 1 Law ed. 610, in an opinion by Chief Justice Marshall, in a trial of an information to declare the forfeiture of a ship, wherein it was said: "We are unanimously of opinion that it is a civil· cause. It is a process of the nature of a libel in rem. It does not, in any degree, touch the person of the offender."

It is our opinion that the order of the county court appealed from is divisible in legal effect: First, it suppresses the search warrant with the consequence that no property taken under the search warrant can be used as evidence in the pending criminal case, and there is no right to appeal from that part of the order and we have no jurisdiction to review it on appeal, and, second, the portion of the order directing a return of the property to the defendants touches a different subject matter and is a proceeding *in rem* and is civil rather than criminal in nature, and the legal effect of that part of the order is the same as if the court had ordered a return of the money under the petition filed by the defendants on June 8, 1950. Therefore, the State has the right, on this appeal, to have the court determine whether or not the property taken under the search warrant is contraband, and our review of the case is limited to that proposition.

It is the contention of the People that the $18,000 in money, at the time of its seizure, was being used as an integral part of gambling operations, and that, in consequence, it was contraband, which will not be returned under any circumstances. Defendants, on the other hand, main-

tain that money, as such, either coin or currency, is never considered contraband. They admit, in passing, that coins have been held contraband where they necessarily form a part of the mechanism of a slot machine. The question whether the money seized is contraband has been argued on the merits although there was no finding by the county court that the money or the other property ordered returned to defendants was contraband. Unless it can be said that, as a matter of law, money under no circumstances can be deemed contraband, the order directing the return of the money to defendants cannot stand and the cause must be remanded to the county court for determination of whether it is contraband and, hence, subject to seizure.

The following authorities may be profitably considered in making a proper determination as to whether monies are contraband: *Germania Club* v. *City of Chicago,* 332 Ill. App. 112; *Dorrell* v. *Clark,* 90 Mont. 585, 4 Pac. 2d 712; *Rosen* v. *Superintendent of Police,* 120 Pa. Super. 59, 181 Atl. 797; *Hofferman* v. *Simmons,* 290 N.Y. 449, 49 N.E. 2d 523; *Fairmount Engine Co.* v. *Montgomery County,* 135 Pa. Super. 367, 5 Atl. 2d 419; *Kearney* v. *Webb,* 278 Ill. 17. A review of those authorities dictates a conclusion that money as such is not ordinarily an article of contraband. It may, however, be such when it constitutes a functional integral part of a gambling operation. We cannot assume to decide this question since it was not passed upon by the trial court but we remand the case to that court for a hearing on that issue.

The remainder of the property involved in the order appealed from involves such items as adding machines, tables, chairs, electric heaters, neon signs, public address system, scratch pads, telephones, and other items not *per se* and of their own nature gambling devices, as well as tally sheets, information boards, jockey record boards, poker chips, ticker tape, form sheets, etc. The trial court ordered all of these items, as well as the money, returned on the

theory that the search and seizure was illegal because the Illinois State highway police had no such power or authority under the theory of separation of powers of the government. No finding was made by the trial court as to whether or not the property in question constituted any of the things for which a search is allowed by division VIII of the Criminal Code relating to search and seizure.

The search warrant in this case was issued pursuant to the provisions of section 2 of division VIII of the Criminal Code, whereby any judge or justice of the peace, on complaint made in writing and verified by affidavit, when satisfied that there is reasonable cause, may issue search warrants to search for and seize gaming apparatus, or implements used, or kept and provided to be used in unlawful gaming, in any gaming house, or in any building, apartment or place resorted to for the purpose of unlawful gaming. The next section of the same statute provides that all such warrants shall be directed to the sheriff or any constable of the county, or bailiff of the municipal court of Chicago, for service and return in the manner specified.

As we have observed earlier in this opinion, the search warrant in the instant case was delivered to a constable, it was served by a constable and the return was signed by the same constable. Therefore, the search and seizure was in accordance with statutory requirements. Consequently we deem it unnecessary in this opinion to pass upon the questions raised in the briefs concerning the operating limits of State highway policemen.

The State contends that all of the property involved was gaming apparatus or implements used, or kept and provided to be used, in unlawful gaming in a place resorted to for the purpose of unlawful gaming and thereby subject to confiscation and destruction under the provisions of section 7 of division VIII of the Criminal Code. As previously stated, the trial court made no finding as to whether the articles seized were articles so used and thereby sub-

ject to search and seizure. Whether much of the property involved is subject to confiscation or not depends upon the nature of its use at the time of the seizure. Although the property in question cannot be used in evidence at the trial of the criminal information because of that part of the trial court's order suppressing the search warrant, the return of the property to the defendants can be ordered only if it is not property subject to confiscation. The trial court having made no finding in reference to that question, we believe that as to the property taken the order of the trial court should be reversed and the cause remanded with directions to the county court to determine whether such property is subject to confiscation.

In view of the foregoing, we reverse the judgment and remand the cause to the county court to proceed in accordance with the views herein expressed.

*Reversed and remanded.*