Jerome SKLAR, Plaintiff,

v.

Jane M. BYRNE, individually and as Mayor of the City of Chicago, and Richard J. Brzeczek, individually and as Superintendent of the Chicago Police Department, Defendants.

No. 82 C 4287.

United States District Court,
N.D. Illinois, E.D.

Feb. 14, 1983.

Kenneth H. Denberg, Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, Chicago, Ill., for plaintiff.

Stanley Garber, Corp. Counsel, Chicago, Ill., for defendant.

Memorandum

LEIGHTON, District Judge.

Jerome Sklar has filed a complaint challenging the constitutionality of Chapter 11.-1–3 of the *Municipal Code of the City of Chicago,* which regulates the registration of handguns within the City. The cause is before the court on defendants' motion to dismiss the complaint for failure to state a claim entitling plaintiff to relief. For the following reasons, defendants' motion is ·granted.

On March 19, 1982, the Chicago City Council passed an ordinance which prohibits the registration of any handgun after April 10, 1982, the effective date of the ordinance, unless it was "validly registered to a current owner in the City of Chicago" before April 10. *Municipal Code of the City of Chicago,* Chapter 11.1–3(c). During the period between March 19 and April 10, 1982, plaintiff was a resident of Skokie, Illinois. He possessed a valid, current Illinois Firearms Identification Card, owned a handgun, and moved to Chicago on April 15, 1982, after the effective date of the ordinance. Therefore, plaintiff is unable to register the handgun that he owns and, consequently, is unable to bring the gun into the city.

In the preamble of the ordinance, the City Council made six findings necessitating its passage:

[T]he annual sales of firearms in the United States is ever increasing; and

[F]irearms, and especially handguns, play a major role in the commission of homicide, aggravated assaults and armed robbery; and

[T]he improper storage of firearms and ammunition is a major factor in accidental deaths and injury in homes; and

[T]he City Council of the City of Chicago has found and determined that the conve-

nient availability of firearms and ammunition has increased the incidence of firearm related deaths and injuries; and [T]he City Council of the City of Chicago has found and determined that it is necessary and desirable to protect the residents of the City of Chicago from the loss of property and injury or death from firearms; and [T]he City Council of the City of Chicago has found and determined that proper registration of firearms in the community will aid in achieving these goals;

Plaintiff's complaint, brought pursuant to 42 U.S.C. § 1983, and seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, claims that the City Council's passage of the ordinance violates equal protection rights secured plaintiff by the Fourteenth Amendment of the United States Constitution and by Article I, Section 2 of the Illinois Constitution. Accordingly, he urges the court to enjoin defendants from enforcing the ordinance. In essence, plaintiff argues that defendants have violated the Equal Protection Clause because he is unable to register the gun that he owns, while owners of guns who resided in Chicago prior to the effective date of the ordinance had an opportunity to take advantage of the ordinance's registration provisions.

■ A determination of the proper standard of judicial review is the first task that this court confronts in assessing the constitutionality of this gun registration ordinance. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 306 (1974). Strict scrutiny is appropriate when a legislative classification operates to the peculiar disadvantage of a suspect class or infringes on the exercise of a fundamental right secured by the Constitution. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). But the present case presents nei-

ther of the predicates for heightened constitutional scrutiny. Only where a classification involves an inherently invidious distinction like race, religion, or alienage can a legislative body be considered to have discriminated against a suspect class. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Plaintiff argues that the Supreme Court in cases like *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), recognized that distinctions based on residency also are inherently suspect and, therefore, deserving of heightened constitutional scrutiny. The cases relied on by plaintiff in support of this proposition are all inapposite, however; the Supreme Court applied strict scrutiny, not because residency distinctions were involved, but because plaintiffs were able to demonstrate that fundamental rights secured them by the United States Constitution were impaired by the legislative distinctions. *See* 405 U.S. at 338, 92 S.Ct. at 1001. Accordingly, there is no basis for concluding that the City of Chicago's firearms ordinance disadvantages a suspect class.

■ The Court of Appeals for the Seventh Circuit, in *Quilici v. Village of Morton Grove,* 695 F.2d 261 (7th Cir.1982), recently addressed the question whether the right to possess a handgun is a right secured citizens by the Constitution of the United States. There, after an extensive review of pertinent constitutional provisions, and many of the same arguments advanced by plaintiff in this suit, the court concluded that the second, ninth, and fourteenth amendments do not confer on an individual a constitutional right to possess firearms. *Quilici,* 695 F.2d at 271.[1] *Quilici* compels this court to conclude that the Chicago firearms ordinance does not infringe on a constitutionally protected right.

---

1. Moreover, since plaintiff formerly resided in a municipality located within Illinois, neither can he set forth a colorable argument that the ordinance's distinction based on duration of residency violates the constitutionally protected right of interstate travel. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Since the Chicago firearms ordinance neither trammels a fundamental personal right nor is drawn upon an inherently suspect distinction, this court must presume the statute's validity and, accordingly, use the rational basis standard of review. *See, e.g., City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). The ordinance must be sustained if the court concludes that it is rationally related to a legitimate state purpose. *Id.* The preamble of the ordinance, where the City Council lists considerations necessitating the enactment of the measure, establishes that the gun ordinance is an attempt by the City, through the registration process, to limit the proliferation and convenient availability of firearms, thereby promoting the health and safety of citizens by reducing firearm related deaths and injuries. *Municipal Code of the City of Chicago,* Chapter 11.1. After *Quilici, see* 695 F.2d at 263 n. 1, it undoubtedly is legitimate for municipalities to employ their police power in furtherance of these objectives, to the extent even of totally banning handguns. Therefore, plaintiff is left to the argument that the City Council acted irrationally when it sought to achieve its objectives by allowing registration only of handguns previously registered by the effective date of the ordinance. He contends that the ordinance is both underinclusive and overinclusive. If the City Council's aim was safety, plaintiff argues, a far better arrangement would have been for the City to limit registration to those applicants who, regardless of when they became residents, are demonstrably knowledgeable about handgun safety.

However, when elected representatives make policy determinations in areas that neither affect fundamental rights nor proceed along suspect lines, a federal judge's role is limited; the court is not free to strike down the ordinance simply because the court, if it were the City Council, might have chosen to enact what may be considered a "fairer" or "wiser" alternative. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Appropriately, the rational basis standard of review is deferential; only the "wholly arbitrary" is incapable of withstanding this level of scrutiny. *Id.* In light of the legitimate objectives sought by the City, the court concludes that the City Council certainly did not act in a wholly arbitrary manner when it sanctioned the registration only of guns which had previously been registered before a certain date.

The Equal Protection Clause does not disqualify legislative provisions simply because they achieve a desired aim "with less than mathematical exactitude." *Id.* Nor does the Equal Protection Clause require the City Council to enact only those measures which will completely eradicate the exigence necessitating the adoption of an ordinance. Indeed, it is permissible for a legislative body to proceed step by step, "adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *Id.; Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). By limiting new registrations instead of banning handguns altogether, as Morton Grove did in *Quilici,* the City of Chicago obviously is not going to eliminate completely the myriad of problems connected with firearm misuse. But, then again, the City reasonably could decide that by drawing a line, by tolerating only those handguns previously registered and no more, a notable first step toward limiting the havoc and mayhem caused by firearms could be made. Accordingly, the court concludes that the contested provisions of the Chicago firearms ordinance do not violate the Fourteenth Amendment of the United States Constitution.

After disposing of the federal question raised in plaintiff's complaint at this early stage of the litigation, the court feels that it would be inappropriate for it to exercise pendent jurisdiction over the state claim challenging the validity of the firearms ordinance under Article I, Section 2 of the Illinois Constitution. *See Waste Systems, Inc. v. Clean Land Air Water Corp.,* 683 F.2d 927, 931 (5th Cir.1982). According-

ly, the court dismisses the portion of plaintiff's complaint brought under the Illinois Constitution without prejudice so that the parties may seek, if they wish, a surer-footed reading of pertinent state law in state courts. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).