THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID HERMANN et al., Defendants-Appellees (The City of Naperville, Intervenor-Appellant).

Second District   No. 2—84—0536

Opinion filed November 26, 1986.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (John A. Davidovich, Assistant State's Attorney, of counsel), for the People.

Henry E. Mueller and Marvin J. Glink, both of Ancel, Glink, Diamond, Murphy & Cope, of Chicago, for appellant City of Naperville.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This is an appeal from an order of the trial court granting the motions of two criminal defendants for the return of certain properties seized from them, pursuant to search warrants and consent searches. The defendants were convicted of felony theft in the underlying criminal cases based on other property seized at the same time but now returned to the owners.

After pleading guilty to felony theft, defendants filed motions in the trial court seeking the return of their property which had been seized pursuant to search warrants and consent searches and which remains unclaimed by others and is in the custody of the city of Naperville police department. The city of Naperville intervened and joined with the Du Page County State's Attorney in claiming the property pursuant to "An Act relating to custody and disposition of certain property possessed by law enforcement agencies" (the Act) (Ill. Rev. Stat. 1983, ch. 141, par. 141 *et seq.*). The trial court proceeded under section 108—1 *et seq.* of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1983, ch. 38, par. 108—1 *et seq.*) and, after a contested evidentiary hearing, granted defendants' motions for the return of the property. This appeal followed.

David Hermann and Vincent Wollard, the criminal defendants in this matter, were charged by indictment on June 8, 1982, with four

counts of burglary and one count of conspiracy to commit burglary. Both Hermann and Wollard entered pleas of guilty on January 21, 1983, to the amended charge of felony theft, and each was sentenced to a period of 24 months' probation and ordered to pay a $750 fine plus costs. Through motions filed on May 31, 1983, and June 10, 1983, and supplemental motions filed on December 16, 1983, the defendants moved the trial court for the return of the seized property still in the custody of the Naperville police department. The property had been seized in the execution of two search warrants at Hermann's residence and several consent searches of Wollard's residence, Wollard's place of business (Oak Park CB Ltd.), Wollard's garage, and another garage.

The defendants alleged that they were not charged with any crime involving the seized property now being held; that the property in the custody of the police was either their own personal property, the property of other individuals for whom the defendants were doing repair work, or property in which they had a superior proprietary interest; that all pending criminal charges were disposed of; that they were promised the return of their property when all matters were concluded; and that all matters were concluded.

Approximately 100 pieces of radio equipment were originally seized from the apartment of David Hermann pursuant to two search warrants which were executed in November 1980. In the course of executing the first warrant, Hermann pointed out to the officers items which were stolen, and those items were taken into police custody. Thereafter, the Naperville police officers learned of other items in the Hermann residence that had been stolen, and they executed the second warrant. This search resulted in the seizure of an additional 197 pieces of equipment.

The approximate value of all the items seized was $750,000. The property the defendants were originally charged with stealing was from Kane County, Du Page County, Will County, Cook County, Lake County, and McHenry County, Illinois, and Racine County, Wisconsin. The equipment identified as stolen came from bus companies, concrete and transport truck companies, individual delivery trucks, passenger automobiles, packing companies, the Cook County sheriff's department, the Brickyard Security Center for police motor vehicles, the Hanover Park park district police, and school districts and communications companies. Included in the seized property were a stamping machine for making new serial number plates, blank plates, and equipment with invalid serial numbers.

On March 11, 1981, the trial court is purported by the State to

have entered an order in the pending criminal proceedings that the Naperville police department return to the lawful owners any seized property, and make every effort to identify the owners of stolen property by serial numbers, etchings and permanent inscriptions. Half of the property seized had been returned before defendants filed their motions requesting the return of the remaining property.

In March of 1984, the trial court held a hearing on the return of the remaining property. The contested evidentiary hearing consisted of testimony of two police officers of the Naperville police department, a representative of the Motorola Company, an assistant State's Attorney, the defendants, and a friend of the defendants. The testimony presented centered on the kind of property seized, the nature of the defendants' business operations, the normal business practices in such businesses, and the circumstances of petitioners' acquisition and holding of the property.

On May 17, 1984, the trial court entered orders directing the Naperville police department to return the remaining property to the defendants, subject to certain conditions concerning possible future identification. The city of Naperville and the State appeal.

■■ ■ The State first argues that the trial court's order of March 11, 1981, deprived the court of further jurisdiction in the criminal case. The March 11, 1981, order upon which the State relies is not contained in the record on appeal. It is the duty of the appellant to present a complete record on appeal so the reviewing court will be fully informed regarding the issues in the case. It is well settled that a reviewing court will not consider anything which is not contained in the record. (*Finance America Commercial Corp. v. Econo Coach, Inc.* (1981), 95 Ill. App. 3d 185, 186; *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1977), 52 Ill. App. 3d 90, 95, *cert. denied* (1978), 435 U.S. 970, 56 L. Ed. 2d 61, 98 S. Ct. 1610.) Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 661.

Under these well-established principles, this court need not consider the order of the trial court purportedly entered on March 11, 1981. Thus, the State's argument that the trial court lost jurisdiction to further order a disposition of the property is not properly before us for consideration.

■ The State next argues that the trial court should have proceeded under the Act rather than under the Code. We disagree. The Act provides a civil remedy for property in the possession of law-enforcement agencies. It states, in pertinent part:

"This Act is applicable to all personal property of which possession is transferred to a police department or other law enforcement agency of a county, city, village or incorporated town, under circumstances supporting a reasonable belief that such property was abandoned, lost or stolen or otherwise illegally possessed, *except property seized during a search, and retained and ultimately returned, destroyed or otherwise disposed of pursuant to order of a court in accordance with Section 108—11, 108—12 or 114—12 of the 'Code of Criminal Procedure of 1963'* or other law hereafter applicable to property thus retained, and except property of which custody and disposition is prescribed by Article II of Chapter 4 of the Illinois Vehicle Code." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 141, par. 141.

Section 1 of the Act contains an exception to all property seized during a search with or without a warrant and returned, destroyed or otherwise disposed of pursuant to an order of court in accord with sections 108—11, 108—12, or 108—14 of the Code of Criminal Procedure. Section 1 provides a concise, clear and unequivocal statement that seized property shall be handled pursuant to the Criminal Code of 1961 and separated from other kinds of property coming into the custody of the police.

On the other hand, section 108 of the Code deals exclusively with property seized in a criminal proceeding. Section 108—2 provides that an inventory of all things seized during a search without a warrant shall be given to the person arrested and a copy to the judge before whom the person arrested is taken. The instruments and articles are to be disposed of in accord with sections 108—11 and 108—12 of the Code. (Ill. Rev. Stat. 1983, ch. 38, pars. 108—11, 108—12.) The Code contains the following significant language: "If the person arrested is released without a charge being preferred against him all instruments, articles or things seized, other than contraband, shall be returned to him upon release." (Ill. Rev. Stat. 1983, ch. 38, par. 108—2.) Section 108—11 provides that the court before whom the seized articles are taken shall order their custody, pending further proceedings. This was properly done by the trial court.

■ Finally, the State argues that while the disposition of the property may be ordered pursuant to the Criminal Code, it should be done only under the procedures set forth in the Act, *i.e.*, that the property should be retained by the law-enforcement authorities until a reasonable and satisfactory proof of ownership is demonstrated. The Act states, in pertinent part:

"Such property believed to be abandoned, lost or stolen or otherwise illegally possessed shall be retained in custody by the sheriff, chief of police or other principal official of the law enforcement agency, which shall make reasonable inquiry and efforts to identify and notify the owner or other person entitled to possession thereof, and *shall return the property after such person provides reasonable and satisfactory proof of his ownership or right to possession* and reimburses the agency for all reasonable expenses of such custody.

\* \* \*

The owner or other person entitled to possession of such property may claim and recover possession of the property at any time before its sale at public auction, *upon providing reasonable and satisfactory proof of ownership or right to possession* and reimbursing the law enforcement agency for all reasonable expenses of custody thereof." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 141, pars. 142, 145.

No authority is cited for the State's proposal, nor were counsel or the court able to find any such authority. For the reason already mentioned, this approach is contrary to the clear language of the statute. However, we feel that there are other reasons for refusing the State's request to keep the seized property.

Our heritage teaches us that placing the burden of proving ownership on one who has been dispossessed of his property by a State-authorized seizure is untenable without a more explicit articulation of such intent. Such approach is contrary to the strong constitutional safeguards enunciated in both the Federal and State constitutions. The United States Constitution and the Bill of Rights were designed to preclude the government from asserting summary authority over the property of any persons. The fourth amendment provides that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures shall not be violated and guarantees the right of the security of our possessions from government seizure. (U.S. Const., amend. IV.) This same guarantee is found in the bill of rights of the Constitution of the State of Illinois. (Ill. Const. 1970, art. I, sec. 6.) Section 15 of the Illinois bill of rights provides that private property shall not be taken or damaged for public use without just compensation as provided by law. Ill. Const. 1970, art. I, sec. 15.

Our right of property has been described as fundamental, natural, inherent, inalienable and sacred. The protection of our right of property is one of the most important objects of government and lies at

the foundation of our constitutional government and is necessary to the existence of civil liberty and free institutions. The constitutional prohibitions against the deprivation of property without due process of law reflects the high value embedded in our constitutional and political history that is placed on a person's right to possess and enjoy what is his, free of governmental interference. 16A Am. Jur. 2d *Constitutional Law* secs. 581, 582 (1979).

There is no question but that the defendants here had possession and control of the disputed property prior to the seizure. Unhindered possession of an item, particularly when accompanied by use of the item as one's own, is strong evidence of ownership. 63A Am. Jur. 2d *Property* sec. 50 (1984); see *Humane Society v. City of Springfield* (1958), 17 Ill. App. 2d 552 (abstract of decision).

This approach is confirmed when one examines other situations where the legislature was confronted with circumstances where property would be seized and in the custody of law-enforcement authorities and it has intended for the authorities to retain possession of the property. Where such intent has been present, it has expressed it with clear language. For example, when the police seize weapons used in the commission of a crime, the law has provided for them to be kept by the seizing authorities or sold, with proceeds going to designated funds. (See Ill. Rev. Stat. 1983, ch. 38, par. 24—6). The same is true for gambling devices (see Ill. Rev. Stat. 1983, ch. 38, par. 28—5); air rifles (see Ill. Rev. Stat. 1983, ch. 38, par. 82—6); vessels, vehicles and aircraft used in violation of the Criminal Code (see Ill. Rev. Stat. 1983, ch. 38, par. 36—1 *et seq.*); property used in violation of the Cannabis Control Act (see Ill. Rev. Stat. 1983, ch. 56½, par. 712); property in violation of the sound-recording statutes (see Ill. Rev. Stat. 1983, ch. 38, par. 43—1); materials or conveyances in violation of the Illinois Controlled Substances Act (see Ill. Rev. Stat. 1983, ch. 56½, par. 1505); or obscene material (see Ill. Rev. Stat. 1983, ch. 38, par. 108—12). For each of these situations the legislature made provision for the seizure, forfeiture, sale or use of the particular materials seized. No such expression of intent has been made here.

Finally, while there is no direct authority on this precise point, our courts have considered similar arguments in at least two other cases. In *People v. Aikens* (1970), 133 Ill. App. 2d 131 (abstract of opinion), the defendant brought a writ of replevin to force the return of personal property taken from him at his arrest. Our court held that replevin, a civil remedy, would not lie, and that the defendant was required to pursue the remedy in the criminal code. Property seized in enforcing the criminal laws is in the custody of the law and cannot be

replevined and property held as evidence in a criminal prosecution is not subject to replevin. See *Denny v. Alder* (1971), 258 Or. 295, 300, 482 P.2d 723, 726; 77 C.J.S. *Replevin* sec. 41 (1952); Annot., 11 A.L.R. 681 (1921).

The return of personal property seized pursuant to section 108 of the Code has been considered by our supreme court in a context somewhat different than raised here. In *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, the State's Attorney of Cook County, pursuant to a search warrant, seized a substantial amount of property from the home of Sam Giancanna after his death. There was no criminal proceeding pending and his daughters filed a complaint in chancery claiming ownership of the property and asking for its return. The State claimed that things seized pursuant to a search warrant must be disposed of pursuant to section 108—11. The trial court granted a temporary restraining order requiring the return of the property. The supreme court, upon the motion of the State's Attorney, granted a writ of *mandamus*. The supreme court held that the appropriate remedy was provided for under section 108—11 and stated that it was error for the trial court to interfere with the statutory remedy governing the return and disposition of property seized. It required the trial court to expunge the temporary restraining order and to dismiss the complaint in the chancery matter. See also *People v. Canaday* (1971), 49 Ill. 2d 416, 423 (section 108—11 does not prevent the court from releasing property seized under a search warrant to the owners or those persons entitled to possession).

For the above reasons, we hold that section 141 does not apply to property seized pursuant to search. Further, the substantive rules of section 141 do not apply procedurally to a return of such property pursuant to section 108—2 *et seq*. The trial judge properly adjudicated the final disposition of property in this case.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.