THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEONARD ZIOMEK, Defendant-Appellee.

First District (3rd Division)   No. 87—504

Opinion filed February 1, 1989.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Robert McNamara, Assistant State's Attorneys, of counsel), for the People.

Paul A. McWilliams and Edwin J. Belz, both of Palatine, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant Leonard Ziomek was charged with unlawful use of weapons, and charged under the Municipal Code of Chicago with failure to register a deadly weapon and unlawful possession of fireworks.

Weapons and ammunition were confiscated from defendant's Chicago home, but the evidence was later suppressed and the arrest quashed on fourth amendment grounds. The trial court then granted defendant's motion for the return of the illegally seized weapons, but directed that the property be returned outside the borders of the City of Chicago. The State appeals the order returning the weapons to defendant.

On January 13, 1984, defendant was arrested and the following property confiscated:

UZI 9 mm
Smith and Wesson 41 Magnum
Browning 9 mm
Ruger 357 Magnum
Ruger 22 Caliber
Walther PPKS .380 Caliber
Colt 45 Caliber
Walther PP 7.65 mm
AMT 380 Backup
Derringer 22 Caliber
Remington 35 Caliber
Marlin 22 Cal., Long Rifle
New Haven 20 gauge shotgun
Blank Starter Pistol
Three Flintlock Pistols
Two 22 Caliber Crossman Pellet Pistols
Crossbow
Gerber Knife
13 Arrows
3,000 Rounds of Ammunition
25 Ammunition Cases
Walnut Display Case

On March 1, 1984, following the granting of defendant's motion to quash the arrest and suppress the evidence, the court ordered the seized weapons confiscated and destroyed. On June 16, 1986, defendant petitioned for the return of the seized property.

On September 23, 1986, a hearing was held to determine if defendant was entitled to the return of the property. The trial court ruled that all of the property except the UZI 9 mm weapon should be returned to defendant. On October 29, 1986, the State argued in a hearing for reconsideration that defendant could not legally possess the unregistered weapons and ammunition in Chicago. On January 14, 1987, the trial court ruled that defendant had a property right in the

guns, but that he could not lawfully possess them within Chicago. The court ordered the property be returned to defendant outside the city limits of Chicago.

■■ ■ Forfeiture proceedings are *in rem* and therefore civil in nature. (*People v. Moore* (1951), 410 Ill. 241, 102 N.E.2d 146; *People v. Hermann* (1986), 150 Ill. App. 3d 224, 501 N.E.2d 842.) After a conviction, or the dismissal of criminal charges, fourth amendment issues are not involved because the guilt or innocence of defendant is not at issue. (See generally 4 W. LaFave, Search and Seizure §11.2(h), at 273 n.255 (2d ed. 1987).) The only issue concerns the contraband nature of the forfeitable property. (*In re Twenty-Seven Thousand Four Hundred Forty Dollars* (1987), 164 Ill. App. 3d 44, 517 N.E.2d 704.) The State must prove its right to the items by a preponderance of the evidence. (*People v. LeShoure* (1986), 143 Ill. App. 3d 839, 493 N.E.2d 687.) The trial court decision will be upheld unless contrary to law or contrary to the manifest weight of the evidence. (*People v. LeShoure*, 143 Ill. App. 3d 839, 493 N.E.2d 687.) Whether the property is contraband and subject to confiscation depends "upon the nature of its use *at the time of the seizure*." (Emphasis added.) *People v. Moore*, 410 Ill. at 252.

The State argues that the trial court improperly ordered the return of the seized property because at the time of the seizure mere possession by defendant constituted a violation of the relevant Chicago ordinances, and thus the property was contraband *per se*. Defendant counters that a gun alone cannot be contraband *per se*, and that subsequent to the time of the seizure, the weapons could be moved out of Chicago and therefore no longer qualify as contraband of any kind.

The parties here correctly focus their analysis upon the issue of whether or not the property is contraband *per se*. A careful review of the qualities of the property reveals the arsenal in the present case is contraband *per se*.

■■ Contraband *per se* includes property for which possession alone constitutes a criminal offense, *e.g.*, sawed-off shotguns, narcotics and counterfeit money. (*In re Fifty-Three Thousand Two Hundred Sixty Three Dollars* (1987), 159 Ill. App. 3d 114, 512 N.E.2d 740; *People v. Gant* (1986), 150 Ill. App. 3d 180, 501 N.E.2d 355, *cert. denied* (1987), 484 U.S. 843, 98 L. Ed. 2d 91, 108 S. Ct. 134; *People v. Mudd* (1977), 54 Ill. App. 3d 603, 370 N.E.2d 37.) Such property need not be returned even if improperly seized. *People v. Steskal* (1973), 55 Ill. 2d 157, 302 N.E.2d 321; see also *United States v. Jeffers* (1951), 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93 (narcotics); *Trupiano v.*

*United States* (1948), 334 U.S. 699, 92 L. Ed. 1663, 68 S. Ct. 1229 (distilling equipment and intoxicating liquor), *overruled on other grounds by United States v. Robinowitz* (1950), 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430.

■ "Derivative contraband" consists of property which is innocent in itself but which has been used in the perpetration of an unlawful act, *e.g.*, a vehicle used in a robbery, or cash derived from the sale of illegal drugs. (*People v. Steskal*, 55 Ill. 2d 157, 302 N.E.2d 321; *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d 114, 512 N.E.2d 740.) The State may retain derivative contraband but it must show a rational relationship between the property and an unlawful purpose before the property is subject to forfeiture. *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d 114, 512 N.E.2d 740.

In choosing the correct category of the seized property, it is vital to look at the purpose of a forfeiture provision. See *United States v. Davis* (S.D. Ill. 1972), 346 F. Supp. 435 (return of contraband *per se*, such as narcotics or an unregistered still, would clearly have frustrated the express public policy against the possession of such objects), citing *United States v. Jeffers*, 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93 and *Trupiano v. United States*, 334 U.S. 699, 92 L. Ed. 1663, 68 S. Ct. 1229. See also *People v. Moore*, 410 Ill. 241, 102 N.E.2d 146 (court focuses on legislative determination that gambling implements are dangerous to public welfare, and finds such items have ceased to be regarded or treated as property and are liable to seizure and forfeiture); *In re Twenty-Seven Thousand Four Hundred Forty Dollars*, 164 Ill. App. 3d 44, 517 N.E.2d 704 (purpose of relevant broad-sweeping forfeiture provision is to control illegal trafficking in controlled substances); *People ex rel. Stocke v. 11 Slot Machines* (1979), 80 Ill. App. 3d 109, 399 N.E.2d 305 (consideration must be given to evil to be remedied by statute prohibiting gambling and possession of gambling devices because of evil consequences which accompany it).

In *Sklar v. Byrne* (N.D. Ill. 1983), 556 F. Supp. 736, *aff'd* (7th Cir. 1984), 727 F.2d 633, a Chicago ordinance requiring the registration of handguns was upheld as constitutional. The court noted findings made by the Chicago city council in regard to the registration requirement. The council found that firearms played a major role in the commission of homicide, aggravated assault and armed robbery; that improper storage of firearms and ammunition is a major factor in accidental deaths and injuries in homes; and that it is necessary and desirable to protect the residents of Chicago from the loss of property and the injury or death connected to firearms. (*Sklar*, 556 F. Supp. at 737-38.)

The ordinance's preamble establishes that it is an attempt to limit the proliferation and convenient availability of firearms, thereby promoting the health and safety of the citizens by reducing firearm-related deaths and injuries. (*Sklar*, 556 F. Supp. at 739; see also *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (purpose of Gun Control Act includes broad remedial aims concerned with widespread, indiscriminate traffic in firearms and general availability to those whose possession is contrary to the public interest, and includes encouraging local governments to enforce their gun control laws and to adopt stricter laws).) On the basis of these public policies, the City of Chicago banned further registration after the statutory cut-off date. Moreover, the ordinance imposes monetary fines and terms of imprisonment as penalties for convictions resulting from violations of the law.

In addition, the legislature, to protect the health, safety and welfare of the public, prohibits the acquisition or possession of a firearm or ammunition without an Illinois firearm owner's identification card (Ill. Rev. Stat. 1985, ch. 38, par. 83—1 *et seq.*) and prohibits convicted felons and others from acquiring such a card (Ill. Rev. Stat. 1985, ch. 38, par. 83—4). The legislature recognized that local ordinances of municipalities may impose additional registration requirements under similar public policies:

> "The provisions of any ordinance enacted by any municipality which requires registration or imposes greater restrictions or limitations on the acquisition, possession and transfer of firearms than are imposed by this Act, are not invalidated or affected by this Act." Ill. Rev. Stat. 1985, ch. 38, par. 83—13.1.

The classification process of contraband as derivative or *per se* determines the property's disposition, since once a court labels the property "contraband *per se*," it need not be returned. (*United States v. Jeffers*, 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93.) But if the court labels the property "derivative contraband," the State must prove by a preponderance of the evidence a nexus between the property and an unlawful purpose. At this point, parties may attempt to "cure" an illegality by manipulating certain pieces of the puzzle. These pieces, or factors which might play a role in a forfeiture decision, include the place and time of seizure; the person from whom the property was seized; any possible cure of the illegality; whether the property was used by defendant and how; whether the property is still needed by authorities; and the policy reasons for the seizure, or the danger or risk to be protected.

Following the property's seizure, a court might label an unregis-

tered gun "derivative contraband." Moving the gun's location to a place without a registration requirement might, on its face, appear to "cure" the illegality of the possession. The court has the luxury of choosing a place and time *after* the offense of unlawful possession of an unregistered weapon occurred, and after the seizure occurred.

If the court classifies the weapon as derivative contraband, and then directs the weapon's removal from the city, it thereby alters the place and time of the original possession. Thus, the illegality of possession alone, the most visible quality of contraband *per se*, disappears. A closer look, however, reveals the error of this method in view of more fundamental, often ignored, elements which distinguish contraband *per se* from derivative contraband.

■ With derivative contraband, the law particularly seeks to seize and thereby protect the evidence of the completed crime. The legislature does not seek to remove all weapons from society, but instead seeks the single murder weapon which killed the victim. The legislature does not seek to remove all money from society, but instead seeks the single cash payment which defendant received in exchange for the narcotics. The legislature is not removing all vehicles from society, but instead seeks only the single identifiable vehicle used in the robbery. The danger is not ongoing. The murder victim will not again be killed by that weapon; the drugs' recipient will not continue buying the same drug lot; and the vehicle will not be used in the identical robbery.

An illegally possessed weapon violating registration requirements does not fit into the derivative contraband mold. Instead, it resembles other contraband *per se* items such as counterfeit money and illegal narcotics. The focus changes from the manner in which the property was used by some individual, to the very nature of the property itself. The unregistered status of the gun is not a single, completed occurrence. Standing alone, the gun's lack of registration creates no individual, identifiable victim. Instead, the lack of registration continues as an ongoing condition. The weapon remains unregistered.

Furthermore, the omitted gun registration requires no active conduct by defendant. The unregistered status remains ongoing, and the danger to be avoided by registering the weapons continues until the property is actually seized. The mere existence of the property presents danger. With contraband *per se*, the legislature or municipality seeks to protect society and potential victims of nonaccidental and accidental deaths and injuries resulting from the easy access to, and improper storage and use of, weapons and ammunition. As long as the unregistered gun is not seized, the danger remains. The law of

that jurisdiction seeks to remove all unregistered guns from society, not merely a single unregistered gun.

We conclude that these are crucial distinctions between contraband *per se* and derivative contraband although they are sometimes unperceived differences, easily masked by improper labeling. The operational purpose of the classifications, therefore, extends beyond the more visible factors of the time and place of seizure. The trial court's attempt to transform the weapons into legitimately possessed property by moving them outside of Chicago fails for these reasons. Such a holding ignores the contraband *per se* nature of the property and ignores the relevant public policies supporting the forfeiture provisions.

■ We concur with the court's analysis set forth in *United States v. Ten Miscellaneous Firearms* (D. Neb. 1985), 622 F. Supp. 759. The court noted that defendant's conviction for possession of unregistered firearms had been reversed due to an unconstitutional search and seizure. The court found the firearms were contraband *per se* and subject to forfeiture solely because defendant was in possession of the firearms, which were unregistered in violation of the National Firearm Act. The court concluded that as a matter of law the government was entitled to forfeiture.

Similarly, in *People v. Jordan* (1962), 37 Misc. 2d 33, 234 N.Y.S.2d 323, an illegal search resulted in the seizure of a gun found in defendant's car. The gun was inadmissible, therefore, at trial on the charge of illegal possession of a firearm. The court refused to return the gun, however, because defendant did not have a valid license. Without the license, possession was unlawful, and under the penal code the gun constituted a nuisance.

In *dicta*, this court stated that a revolver was contraband where defendant carried it concealed and without the proper State firearm owner's identification card. *People v. Green* (1977), 45 Ill. App. 3d 506, 359 N.E.2d 1110. See also *United States v. Bowdach* (S.D. Fla. 1976), 414 F. Supp. 1346, *aff'd* (5th Cir. 1977), 561 F.2d 1160 (in *dicta*, court states that possession of an automatic weapon is legal only if registration requirement is met, and violation of that requirement would result in gun's acquiring status of contraband). *Cf. City of Chicago v. Pudlo* (1983), 123 Ill. App. 3d 337, 344, 462 N.E.2d 494, *cert. denied* (1985), 471 U.S. 1066, 85 L. Ed. 2d 497, 105 S. Ct. 2140 (court remands for hearing on issue of motion for return of weapons and quotes trial court statement that it would have returned the illegally seized weapons "had you been registered properly with all the authorities"); *People v. Gant*, 150 Ill. App. 3d 180, 191, 501 N.E.2d 355

(court notes that sawed-off shotgun was contraband and thus subject to forfeiture, and on remand other guns could be returned to defendant only "if that may legally be done").

The weapons and ammunition confiscated from defendant were suppressed as evidence. If a motion to suppress illegally seized evidence is granted, "the property shall be restored, *unless otherwise subject to lawful detention.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 114—12(b).) The property here was lawfully detained due to its unregistered status as contraband *per se.* The police confiscated the items, and arrested defendant, at his Chicago home. He was charged with unlawful use of weapons (Ill. Rev. Stat. 1983, ch. 38, pars. 24—1(a)(4), (a)(10)); failure to register a deadly weapon (Chicago Municipal Code §11.1—7 (1984)); and unlawful possession of fireworks (Chicago Municipal Code §125—22 (1984)). A statutory cut-off date barred the possibility of a subsequent registration of the guns. Chicago Municipal Code §§11.1—3(b), (c) (1984).

Weapons seized under these provisions are to be destroyed once they are no longer needed as evidence. (Chicago Municipal Code §11.1—20(1984).) Following the dismissal of all criminal charges against defendant due to the fourth amendment violations, the weapons were no longer needed as evidence and thus were subject to forfeiture and destruction. (See also Ill. Rev. Stat. 1985, ch. 38, par. 108—2 (when no charges are preferred, all things, *other than contraband,* shall be returned to the person upon his release from custody).) We have found this property to be contraband *per se,* and thus it was subject to forfeiture.

Under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*), a defendant may designate a new owner for the forfeited weapons. (See *People v. LeShoure,* 143 Ill. App. 3d 839, 493 N.E.2d 687; see also *State v. Sutterfield* (Minn. App. 1984), 347 N.W.2d 295; *LoGiudice v. State* (1982), 164 Ga. App. 709, 297 S.E.2d 499, *grant of cert. vacated* (1983), 251 Ga. 711, 309 S.E.2d 355, *cert. denied* (1984), 466 U.S. 950, 80 L. Ed. 2d 538, 104 S. Ct. 2152.) The State legislature and City of Chicago, however, have not provided for the sale or use of seized property in the weapons seizure laws at issue here. (*Cf. People v. Hermann,* 150 Ill. App. 3d 224, 501 N.E.2d 842 (listing statutes regarding disposition of weapons used in crimes; obscenity; gambling devices; air rifles; vehicles used in crimes; and drugs).) Additionally, we note that the ordinance does not permit the handgun owner to even sell or give away the weapons in Chicago. Chicago Municipal Code §11.1—2(a) (1984).

We note that this court did not hold guns to be contraband *per se*

in *People v. Earl* (1984), 121 Ill. App. 3d 254, 459 N.E.2d 342, and *People v. Mudd* (1977), 54 Ill. App. 3d 603, 370 N.E.2d 37. In both cases, however, the State either did not dispute, or stipulated, that the weapons were *not* contraband *per se*. Defendant relies on *People v. Wynn* (1981), 98 Ill. App. 3d 567, 424 N.E.2d 906, where the court stated that a gun is not contraband *per se* and that a conviction was required prior to confiscation. Defendant in *Wynn* had been placed on three months' supervision for failure to maintain a valid firearm owner's identification card (Ill. Rev. Stat. 1979, ch. 38, par. 83—2(a)). In contrast, in the present factual setting we hold the gun does constitute contraband *per se*. Moreover, while the confiscation in *Wynn* was pursuant to section 24—6(a) of the Criminal Code of 1961, which expressly requires a conviction, the present confiscation was pursuant to the Municipal Code of Chicago provisions which were not in effect at the time of *Wynn* and which include no such conviction requirement. See *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (acquittal on criminal charges does not prevent *in rem* forfeiture proceedings).

The trial court erred in ordering the return of the weapons outside the City of Chicago. We direct the trial court to order the confiscation of the property and proceed to dispose of the property under the relevant local ordinance.

For these reasons, the judgment of the circuit court of Cook County ordering the return of the weapons outside the City of Chicago is reversed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded with directions.

FREEMAN, P.J., and WHITE, J., concur.