114

*In re* FIFTY-THREE THOUSAND TWO HUNDRED SIXTY THREE DOLLARS (The People *ex rel.* Richard M. Daley, State's Attorney of Cook County, Illinois, Plaintiff-Appellee, v. Fifty-Three Thousand Two Hundred Sixty Three Dollars, Defendant-Appellant).

First District (5th Division)   No. 84—1855

Opinion filed July 31, 1987.

Francis X. Speh, Jr., and Sandi G. Johnson-Speh, both of Speh & Johnson-Speh, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Henry A. Hauser, Daniel Cannon, and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Chicago police officer Charles Bowers executed a search warrant for the premises at 1528 East 93rd Street, Chicago, Illinois, and the person of Pedro Davis, described in the search warrant as a medium-complected, 135-pound black male. During the execution of the search warrant Bowers arrested James Davis, a dark-complected, 235-pound black male, Richard Hill and Dearon Oglestree in the premises. Bowers found $53,000 in a locked combination safe in a bedroom closet in the apartment and the trial court entered a judgment of forfeiture of said money. Davis appeals. Our resolution of this appeal rests on

Davis' contention that the trial court's judgment of forfeiture of the $53,000 is contrary to the trial court's expressed findings that Davis had borrowed the money from a loan company to remodel his business and that the judgment of forfeiture was therefore against the trial court's findings and the manifest weight of the evidence. We agree and reverse.

Bowers testified that he found a locked combination safe in a bedroom closet in the apartment. He asked Davis to open the safe and Davis did. In the safe Bowers found $53,000, which Davis said belonged to him. Bowers testified further that a bag which contained $263 and marijuana was found in the closet. Bowers admitted, however, that at a previous trial he swore that this bag was found in the bedroom at the closet door entrance. Bowers testified that other bags of marijuana and a bag of cocaine were found in the apartment.

James Davis testified that he owned and was self-employed in his barbecue fast-food restaurant at 9101 South Mackinaw in Chicago, which he opened in 1983. He testified that he lived in a house at 9854 South Drexel Avenue in Chicago with his mother and his three minor children. Davis further testified that he rented the second-floor apartment at 1528 East 93rd Street to Richard Hill and that Hill lived there. Davis stated that he occasionally stayed at the second-floor apartment, which was only a few blocks from his barbecue business, when he had a date with a lady friend or when he went there to put money in or take money out of his safe. Davis testified that he regularly put money from his restaurant business in his safe in the bedroom closet in the apartment.

Davis testified that in June 1983 he borrowed $50,000 from NCS Financial Service, 1511 Rand Road in Palatine, Illinois, to remodel his restaurant. His mother's house at 9854 South Drexel and his automobile were assigned as collateral for the loan. Davis identified defendant's exhibit No. 2, which was also State's exhibit No. 4, as a copy of the promissory note which was signed by him and his mother and given to NCS Financial Service as further security for the $50,000 loan.

Davis stated that he received $50,000 that he borrowed from NCS Financial Service in cash because he feared that he would be unable to cash a check for that amount of money. Davis related that he put the $50,000 in the safe in the closet in the apartment at 1528 East 93rd Street, along with $2,000 he previously put there from $3,000 he had won in the State lottery.

Davis stated that the loan was payable in 90 days but Davis explained to the loan company that the remodeling of his restaurant had

not been completed and the loan company granted him extensions for payment.

Davis testified that in June 1983 he advanced $3,000 of the borrowed money to Cy Milner of Unity Construction Company on Fairfield Avenue in Chicago to begin remodeling the restaurant but Milner did not begin the remodeling. Milner gave Davis three postdated checks for $1,100 each, which Davis was to hold as collateral until Milner refunded the $3,000 to Davis. The extra $300 was Milner's payment to Davis for withholding Davis' money and for Davis holding Milner's checks in lieu of Milner's refund. Milner later refunded the $3,000 to Davis.

A copy of Davis' $50,000 promissory note dated June 1, 1983, payable to NCS Financial Service and signed by James Davis and Isabelle Davis, copies of three United Construction and Supply Company checks, numbers 1361, 1362 and 1363, dated August 7, 1983, for $1,100 each drawn on an account at the First National Bank of Chicago, payable to Davis and signed by Cy Milner and Davis, and the 9101 South Mackinaw restaurant license were admitted into evidence and are in the record on appeal.

Davis testified that he never saw the narcotics that were seized in the apartment by Bowers and that the narcotics did not belong to him.

Richard Hill testified that he lived in the apartment and that he was arrested in the apartment when Davis was arrested.

Elgin Bogan testified that he was employed by a private company as an investigator and that he lived in Davis' 1528 East 93rd Street second-floor apartment from 1976 to 1977. Bogan testified that he arranged for Davis to meet the person at NCS Financial Service for Davis to borrow $50,000. Bogan stated that he was present at NCS Financial Service when Davis signed the $50,000 promissory note and received the $50,000 in cash. Bogan testified that Davis' mother (Mrs. Isabelle Davis) also signed the promissory note the following day when Bogan drove Davis and his mother to NCS Financial Service.

Although the trial court expressly found from the corroborated and uncontradicted evidence that Davis had borrowed the $50,000, the court nevertheless ordered the money forfeited.

Traditionally, forfeiture actions have proceeded upon the fiction that inanimate objects can be guilty of wrongdoing. The theory has been that if the object is "guilty" of criminal conduct, it should be held forfeit. (*United States v. United States Coin & Currency* (1971), 401 U.S. 715, 719, 28 L. Ed. 2d 434, 438, 91 S. Ct. 1041, 1044.) Thus, the forfeiture action is an *in rem* proceeding in which the money is

the formal respondent. Forfeiture statutes are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise. 401 U.S. 715, 721-22, 28 L. Ed. 2d 434, 439, 91 S. Ct. 1041, 1045.

██ In an action commenced by an accused to defeat the entry of an order of forfeiture of items, the State must prove its right to the items by a preponderance of the evidence. (*People v. LeShoure* (1986), 143 Ill. App. 3d 839, 844, 493 N.E.2d 687.) This court should reverse the forfeiture decision of the trial court if it is contrary to the manifest weight of the evidence. 143 Ill. App. 3d 839, 844, 493 N.E.2d 687.

██ There are two categories of contraband. Contraband *per se* are items the possession of which alone constitutes a criminal offense, *i.e.*, certain narcotics and counterfeit money. Such articles need not be returned to the owner even if improperly seized by law enforcement officers. (*People v. Steskal* (1973), 55 Ill. 2d 157, 159, 302 N.E.2d 321.) Derivative contraband are articles which are not inherently illegal, but which have been or are used in an unlawful manner. (55 Ill. 2d 157, 159, 302 N.E.2d 321.) Money is inherently legal and is not an item the possession of which alone constitutes a criminal offense. Money is not contraband unless it is statutorily declared to be such because of its use in an unlawful manner. (*People v. Snyder* (1977), 52 Ill. App. 3d 612, 614, 367 N.E.2d 752.) When an article is not contraband *per se* its use must have a rational relationship to an unlawful purpose before it is subject to forfeiture. 52 Ill. App. 3d 612, 614, 367 N.E.2d 752.

Section 12(a)(4) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 712(a)(4)) states:

"The following are subject to forfeiture:

[A]ll money *** which [is] used, or intended for use, in violation of this Act."

Section 505(a)(5) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(5)) states:

"The following are subject to forfeiture:

[E]verything of value furnished, or intended to be furnished, in exchange for a substance in violation of this Act, all proceeds traceable to such an exchange, and all moneys *** used, or intended to be used, to facilitate any violation of this Act; ***. *All moneys *** found in close proximity to forfeitable substances *** are rebuttably presumed to be forfeitable under this Act. The burden of proof is upon claimants of the property to rebut this presumption.*" (Emphasis added.)

■ There was no evidence that the $53,000 in Davis' safe was used or was intended to be used in violation of the Cannabis Control Act. There was no evidence that drugs were sold or delivered to Davis, that Davis was a drug dealer, that Davis possessed the seized drugs, or that the money in the safe was used in any criminal activity. Davis established by uncontradicted and corroborated evidence that the money in the safe was borrowed and was not involved in any violation of the Cannabis Control Act. The trial court expressly found that $50,000 of the money found in the safe was received in cash by Davis from a loan.

In *People v. Mota* (1975), 27 Ill. App. 3d 982, 327 N.E.2d 419, the State failed to prove that the money seized in the defendant's apartment was a derivative of contraband, *i.e.*, that the money was integrally related to gambling activity. The statute in that case presumed that any search and seizure of contraband was legal. Because the trial court granted Mota's motion to suppress, the appellate court ruled, the search was illegal and there was no competent evidence to show that the money seized was integrally used in criminal activity. The trial court's order of forfeiture was reversed.

We are also guided by the principles in another forfeiture case, *People v. Mudd* (1977), 54 Ill. App. 3d 603, 370 N.E.2d 37. There, defendant James Mudd was arrested and charged with illegal use of a weapon. He was tried by a jury and found not guilty. The trial judge denied Mudd's motion for the return of his gun and, although the State stipulated that the gun was not contraband *per se*, the trial judge ordered the gun confiscated and destroyed.

The appellate court stated that the trial judge's order confiscating the gun was a forfeiture action. While the forfeiture of property and derivative contraband may be civil in form, courts have long recognized it as criminal in nature with its objective to penalize unlawful activity. The appellate court reversed the trial court's decision and ruled that the gun could not be confiscated and destroyed because it was not contraband *per se*.

■ The following recitation of the trial court's findings in the case at bar precludes forfeiture of the money found in the defendant's safe. The trial court stated:

> "[T]he claimant here, must prove what portion of the money was not related to a violation of the [Cannabis Control] Act.
>
> * * *
>
> In the present case, claimant Davis was not convicted of possession or any other violation of the Cannabis Act.
>
> * * *

[T]he money was in cash, that's $53,263 ***. A majority of the money was found in a combination safe which was on casters in a bedroom closet. ***. The apartment was rented to [Davis], who subsequently sub-rented to two other men. A total of four men used the apartment and had keys to the apartment. *** At least two different men slept in the room at different times. All this activity continued during the period in which the $53,263 *** was in the apartment.

The claimant's [Davis] home, he testified, was with his mother and children on Drexel, and that the apartment was kept by the claimant strictly for his female guests and for him to let off steam.

The $53,263 *** was kept in cash in a safe to finance the remodeling of his kitchen—restaurant.

\* \* \*

Focusing on the source of funds and [Davis'] ownership, [Davis] testified that he borrowed $50,000 *** in cash from a finance company on or about June 1st. A [promissory] note was introduced to substantiate Mr. Davis' claim. The testimony and documents were unrefuted by the State. The collateral for the loan, according to Mr. Davis' testimony, was his mother's house, which was mortgaged and his car, which had payments.

*The Court finds, based on the unrefuted testimony that the $50,000 *** was borrowed by Mr. Davis on June 1st from the finance company, and that this $50,000 was taken in cash.*

Mr. Davis rented the apartment. Mr. Davis was in the apartment for two-and-a-half hours on the day of the arrest. The marijuana was in the apartment. Therefore, it is reasonable to infer from these facts that Mr. Davis and/or the four people, all four people who occupied the apartment were in possession of marijuana.

Because the money was in close proximity to the marijuana and all the money was kept in unusual circumstances, this Court concludes that the money was used or intended to be used in violation of the Cannabis Act ***.

The Court finds that Mr. Davis' claim to the money, $53,263, has not been proved to the satisfaction of this Court under Section 712. ***.

[U]nder Section 1505 of Chapter 56½, money found in close proximity to a controlled substance is forfeitable. Section 1505 raises a presumption, a rebuttable presumption, that all money found in close proximity to the forfeited substance is rebuttably

presumed to be forfeited.

\* \* \*

The Court finds that the money was in close proximity to the cocaine [on the bedroom dresser]. This raises the presumption. Claimant Davis must rebut the presumption with competent evidence.

Claimant Davis asserts that by showing that he borrowed the $50,000 in June and by saying that he had no knowledge of the drugs in the room, that he rebuts the presumption. The Court does not accept his assertion. *The Court finds that* \*\*\* *Mr. Davis did borrow $50,000 in June* \*\*\*.

\* \* \*

[U]nder both Sections 1505 and 712, the $50,263 [*sic*] is forfeited to the State." (Emphasis added.)

The trial court stated:

"The claimant [Davis] here must prove what portion of the money was not related to a violation of the act.

Mr. Davis' claim to the money, $53,263, has not been proved to the satisfaction of this Court under Section 712 \*\*\*."

This indicates that the trial court misconstrued the burden of proof and improperly shifted the burden from plaintiff, the People of the State of Illinois, to Davis, who simply sought the return of his money. Davis did not have the burden to "prove what portion of the money was not related to a violation of the act" as the trial court mistakenly stated. Although Davis' claim to the money found in his safe, $53,000, was clearly established, his claim to the money was not required to be established under section 712, as the trial court also mistakenly stated.

Section 12(a)(4) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 712(a)(4)) provides, "[A]ll money \*\*\* which [is] used, or intended for use, in violation of this Act" may be forfeited. This section does not impose on Davis the burden of proving his claim to the money to the satisfaction of the court. The burden of proving a right to the money by forfeiture was on the plaintiff-State. To sustain that burden the plaintiff had the burden to prove that the money was "used, or intended for use, in violation of the Act." Not one iota of evidence was presented by the plaintiff to sustain this burden and the trial court erred in shifting the burden onto Davis.

■ In its claim for a forfeiture of the money, the plaintiff relied exclusively on the presumption contained in section 505(a)(5) of the Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1505(a)(5)) to establish that the money was "furnished, or intended to

be furnished, *** [and] used, or intended to be used, to facilitate any violation of this Act." As stated, this presumption that the money was furnished, used or intended to be used in an illegal drug transaction, *i.e.*, "to facilitate any violation of this Act," created by the money being found in close proximity to the drugs, is rebuttable. The burden of proof to rebut this presumption was upon Davis, for the section provides, "The burden of proof is upon claimants of the property to rebut this presumption." This provision, no other provision of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½ par. 701 *et seq.*) and no other provision of the Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*), imposes a burden on the claimant to prove to the satisfaction of the trial court his claim to money admittedly seized from him or from his possession, or to prove what portion of the money was not related to a violation of the Act, as the trial court erroneously held.

Moreover, Davis clearly established his claim to the money. Davis testified that he had borrowed the money and the trial court expressly so found. The trial court found, "Focusing on the source of funds and the claimant's ownership, the claimant Davis testified that he borrowed $50,000 *** in cash from a finance company on or about June 1st. A note was introduced to substantiate Mr. Davis' claim. The testimony and documents were unrefuted by the State. The collateral for the loan, according to Mr. Davis' testimony, was his mother's house, which was mortgaged, and his car, which had payments. The Court finds, based on the unrefuted testimony, that the $50,000 *** was borrowed by Mr. Davis on June 1st from the finance company, and that this $50,000 was taken in cash." The trial court's finding from the corroborated and uncontradicted evidence that Davis had borrowed the money on June 1 refuted and rebutted the statutory presumption that the money had been used or was intended to be used in violation of the Controlled Substances Act based upon the money's discovery (in a locked safe) in close proximity to drugs.

▰ It appears that the trial court misapprehended the role of the statutory presumption. A presumption ceases to operate in the face of contrary evidence. (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 102, 357 N.E.2d 1128.) The Illinois Supreme Court stated:

> "A presumption is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption

vanishes entirely." 65 Ill. 2d 95, 102, citing *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11, 31, 167 N.E. 807.

A presumption does not shift the burden of proof but only creates the need for evidence to meet the *prima facie* case created by the presumption. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 532, 232 N.E.2d 708.) In *Diederich v. Walters* (1976), 65 Ill. 2d 95, 102, 357 N.E.2d 1128, the supreme court stated:

> "[T]he presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate."

*Franciscan Sisters Health Care Corp. v. Dean* (1981), 102 Ill. App. 3d 61, 429 N.E.2d 914, was a will contest. It was alleged that the defendant-attorney stood to receive a substantial benefit from the will and had exerted undue influence over the testatrix. The trial court found that the evidence presented would not have been sufficient to establish undue influence, and thus upset the will, without the presence of the presumption of undue influence in the case. The appellate court reviewed Illinois law on presumptions and their effect and concluded that the trial court had misconstrued the role of the presumption and had incorrectly shifted the burden onto the defendant. The appellate court in a split decision held that where a plaintiff relies upon a presumption in presenting his case and the defendant presents contrary evidence, the presumption vanishes entirely and the plaintiff still has the burden of proving his allegations. As exemplified by the court:

> "When fact P is presumed, evidence that will support not-P constitutes clear and convincing proof in rebuttal. A defendant faced with a presumption has the burden of producing evidence to rebut it, not the burden of persuading the fact finder that facts Q, R and S exist." 102 Ill. App. 3d 61, 69-70, 429 N.E.2d 914.

Affirming the appellate court concerning the effect of presumptions, the supreme court stated in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872;

> "In *Diederich v. Walters* (1976), 65 Ill. 2d 95, 100-03 (hereafter *Diederich*), this court addressed the approach taken in courts of this State concerning the effect of presumptions:
>
> '***. With regard to the procedural effect of presumptions, most jurisdictions in this country follow the rule that a

rebuttable presumption may create a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption. However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. (See 1 Jones, Evidence sec. 3:8 (6th ed. 1972).) The burden of proof thus does not shift but remains with the party who initially had the benefit of the presumption. Consistent with this view, Dean Wigmore states in his treatise on evidence that "the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law ***." '[T]he presumption loses its force when evidence is introduced against it ***.'

*** The prevailing view that a presumption ceases to operate in the face of contrary evidence has generally been followed in Illinois. As was stated by this court in *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11, 31, and restated in numerous subsequent decisions: 'A presumption is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely.' [Citations.] More recently in *McElroy v. Force* (1967), 38 Ill. 2d 528, 532-33, we stated: 'A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from the facts proved. [Citations.] These presumptions "do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." [Citations.] Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of

going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate. [Citations.]
\*\*\* '\*\*\* These presumptions "do not shift the burden of proof." The appellate court was correct in construing the term 'burden of proof' here narrowly to mean burden of persuasion, since the term 'burden of proof' encompasses both the burden of producing evidence that will satisfy a judge of the existence of an alleged fact and the burden of persuading the trier of fact that the alleged fact is true. (McCormick, Evidence sec. 336, at 783-84 (2d ed. 1972).) The burden of persuasion does not shift but remains with the party who initially had the benefit of the presumption.

\* \* \*

The prevailing theory regarding presumptions that Illinois follows and *Diederich* speaks about is Thayer's bursting-bubble hypothesis: once evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes. [Citations.] It is consistent with the Thayer approach that the party producing evidence to rebut the presumption must come forward with evidence that is 'sufficient to support a finding of the nonexistence of the presumed fact.' \*\*\*. While *Diederich* said that, '\*\*\* "[i]f evidence is introduced which is contrary to the presumption, the presumption will cease to operate \*\*\*." ' " 95 Ill. 2d 452, 460-63, 448 N.E.2d 872.

■ The trial court in the case at bar specifically found that Davis borrowed the money and received it in cash. This was contrary to the presumption that the money was forfeitable as traceable to, used, or intended to be used in violation of the Act. The trial court's finding that the presumption was not rebutted by defense evidence is a misconstruction of the role of a presumption; and the trial court improperly, as in *Franciscan Sisters Health Care Corp.*, shifted to Davis the burden of proving that the money was not traceable to a violation of the Act, when the State, in fact, had the burden of proving the money was traceable to a violation of the Act.

The trial court found, "Mr. Davis rented the apartment. Mr. Davis was in the apartment for two-and-a-half hours on the day of the arrest. The marijuana was in the apartment." The trial court then concluded, "Therefore, it is reasonable to infer from these facts that Mr. Davis and/or the four people, all four people who occupied the apartment were in possession of marijuana." This conclusion is contrary to

the trial court's finding that "Davis was not convicted of possession or any other violation of the Cannabis Act." This conclusion by the trial court is likewise contrary to Davis' acquittal on all the charges arising out of Bower's discovery and seizure of the narcotics in the apartment. Forfeiture statutes and proceedings, though they may be civil in form, are in their nature criminal. (*Boyd v. United States* (1886), 116 U.S. 616, 634, 29 L. Ed. 746, 752, 6 S. Ct. 524, 534.) The object of a forfeiture proceeding, like a criminal proceeding, is to penalize for the commission of an offense against the law. (*One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 700, 14 L. Ed. 2d 170, 175, 85 S. Ct. 1246, 1250.) Forfeiture statutes and proceedings must therefore be strictly construed.

Davis further contends for reversal that because he was acquitted of all the alleged narcotic violations arising out of his arrest and Bower's discovery and seizure of the drugs in the apartment, his money discovered and seized in the apartment cannot be forfeited under the Cannabis Control Act. The State does not argue to the contrary. The State's only response to this contention is that it was not raised by Davis in the trial court and is therefore waived. We find it unnecessary to decide this issue.

We find that Davis' uncontradicted and corroborated evidence refuted the statutory presumption that the money was used for an illegal narcotic purpose.

■ We conclude that the trial court's forfeiture of the $53,000 seized from Davis' safe was contrary to the trial court's finding that Davis borrowed the money and was against the manifest weight of the evidence. Davis made no claim to the $263 that was found in a bag with marijuana. The judgment forfeiting that $263 is affirmed. The judgment of forfeiture of the $53,000 seized from Davis' safe is reversed.

Affirmed in part and reversed in part.

LORENZ and MURRAY, JJ., concur.