NOTICE
Decision filed 08/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230166-U

NO. 5-23-0166

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 15-MR-959 |
| | ) | |
| ONE 2006 CHEVROLET CORVETTE and ONE HUNDRED FOUR THOUSAND THREE HUNDRED TWO DOLLARS AND EIGHTY-ONE CENTS ($104,302.81) UNITED STATES CURRENCY, | ) ) ) ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| (Daniel Hudson, Claimant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice McHaney and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's forfeiture order where the connection to illegal drug activities and subject property supported forfeiture.

¶ 2     Claimant, Daniel Hudson, appeals the order of the circuit court of Macon County granting the State's complaint for forfeiture. On appeal, claimant argues that the court erred by ordering forfeited $100,352.61 of United States (U.S.) currency. For the following reasons, we affirm.

¶ 3                                    I. Background

¶ 4     We limit our recitation to the facts necessary for the disposition of this appeal. On December 10, 2015, the State initiated a civil forfeiture proceeding by filing a complaint for

1

forfeiture of $104,302.81 of U.S. currency, pursuant to the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2014)) and the Cannabis Control Act (725 ILCS 150/3 (West 2014); 720 ILCS 550/1 *et seq.* (West 2014)). According to the State's complaint, the Decatur Police Department received an anonymous tip concerning claimant and his involvement in narcotics offenses. On October 5, 2015, police went to a vacant residence at 618 South Haworth Avenue, Decatur, Illinois (vacant property), located next to claimant's residence at 608 South Haworth Avenue (claimant's residence). A canine unit subsequently searched the vacant property and located two firearms, drug packaging, and a document with claimant's name on it. During the search, police observed claimant leaving the area in a 2006 Chevrolet Corvette. After claimant returned, he agreed to police searching his residence. During the search of claimant's residence, police located over 800 grams of cannabis, drug packaging, approximately $3,755 of U.S. currency, and documents concerning a financial account valued at $100,352.61 of U.S. currency at the Land of Lincoln Credit Union.

¶ 5     The State also alleged that claimant, who acknowledged he was on federal parole for a narcotics-related offense in October 2015, admitted in an interview with police that he earned the $3,755 of U.S. currency located in the house by selling cannabis. Claimant also stated that he "had been purchasing and selling one to two pounds of cannabis a month and selling it in gram quantities equaling approximately 50 pounds of cannabis equaling more than $110,000" in profit since "being placed on federal parole." Claimant also stated to police that his residence was burglarized on September 9, 2015, at which time $10,000 that claimant earned from selling cannabis was stolen.

¶ 6     On January 26, 2016, claimant filed an answer to the State's complaint for forfeiture. In his answer, claimant admitted that he was on federal parole for a narcotics-related offense for

2

crack-cocaine at the time of the October 2015 search. Claimant admitted that a police canine unit searched the vacant property, locating two firearms, drug packaging, and a document with claimant's name on it and that police observed him leaving the residential area in his 2006 Chevrolet Corvette. When claimant returned to the residential area, he willingly allowed police to search his residence. Claimant also admitted that police located over 800 grams of cannabis, drug packaging, approximately $3,755 of U.S. currency, and documents concerning his settlement money at the Land of Lincoln Credit Union. Although claimant filed an answer claiming interest in the property that the State sought to seize, including the Corvette, approximately $3,775 of U.S. currency, and settlement money, he denied that the property was subject to forfeiture.

¶ 7     On November 7, 2022, the trial court held a hearing on the State's complaint for forfeiture. From the outset, the State acknowledged that the settlement money originated from a medical malpractice settlement with the U.S. Bureau of Prisons and that claimant purchased the 2006 Chevrolet Corvette with money from that account. The State argued, however, that the evidence would show, by a preponderance of the evidence, that claimant used the settlement money to further his drug enterprise. The following evidence was adduced.

¶ 8     Detective Chad Ramey of the Decatur Police Department, an expert in the distribution of cannabis and narcotics, testified that he believed, given the large quantities of cannabis in claimant's possession, that claimant possessed cannabis with intent to distribute. Detective Ramey stated that claimant, himself, stated in an interview that he purchased on average of two pounds of cannabis per month and paid approximately $1,200 per pound. Claimant then sold the cannabis for $15 per gram. According to Detective Ramey, police seized "just shy of two pounds [on October 5, 2015], which goes hand in hand with [claimant's] own statements." During his investigation, Detective Ramey obtained records of claimant's financial accounts at the Land of Lincoln Credit

Union. Claimant first opened checking and savings accounts in 2011 (first account) and then opened a new account with both checking and savings accounts in January 2015 (new account). In January 2015, claimant deposited his settlement money into the new account, including approximately $37,000 into checking and $250,000 into savings. He withdrew approximately $61,000 in cash from the new account during that month. Also in January 2015, claimant made several cash withdrawals, including $2,000 on January 13, $1,000 on January 14, $1,500 on January 17, and $50,000 two weeks later, as well as gifting $5,000 to claimant's mother's account.

¶ 9    In February 2015, claimant wrote a cashier's check for $23,000 from the new account to Chicago Title to purchase his home. In April 2015, claimant wrote a $41,000 check from the new account to purchase the 2006 Chevrolet Corvette. At the end of April 2015, the balance of the new savings account totaled approximately $165,000 and the new checking account had a $25 balance. Claimant also withdrew $22,250 in cash in May 2015; $3,000 in cash in June 2015; $4,500 in cash in July 2015; $8,300 in cash in August 2015; and $26,000 in cash in September 2015. According to Detective Ramey, claimant periodically transferred roughly $500 every few months from the new account to the first account following the settlement "and us[ed] his debit card in the first account to pay for certain small items or hotel rooms." Detective Ramey also testified that claimant's supplemental security income (SSI) disability payments decreased in 2014 and then ended in 2015 following receipt of his settlement money.

¶ 10    Next, Detective Jason Hesse of the Decatur Police Department testified that he participated in the search of the vacant property and claimant's residence. At the vacant property, police discovered approximately 12 grams of loose cannabis near the backdoor, two revolvers near or on the front porch, a document addressed to claimant, and heat-sealed packaging on the front porch. According to Detective Hesse, "drug dealers [use heat-sealed packaging] for transportation" or to

4

"mask the odor." After police took claimant into custody, they located $755 of U.S. currency, keys to a Corvette, and two phones on claimant's person. Claimant consented to police searching his residence and also informed police that they would discover approximately two pounds of cannabis inside. Police located the cannabis, approximately $3,000 of U.S. currency in a rolled-up yoga mat, a functional digital scale, and sandwich baggies. In addition, police discovered documents regarding claimant's Land of Lincoln Credit Union account. Claimant informed police that his home was burglarized in September 2015 and $10,000 was stolen. Following the burglary, claimant informed police that the $10,000 came from "a malpractice claim" and that "he kept the money at his house to pay bills." At that time, claimant denied that the $10,000 was from drug sales. However, on October 5, 2015, claimant informed police that "the currency located was actually from drug sales, and he "then changed his story [from September 2015] and said that t[he] $10,000 was profits from drug sales."

¶ 11    Next, Detective Steve Young of the Decatur Police Department testified that he interviewed claimant during the search, at which time claimant stated that he only withdrew, and never deposited, money from the new account at the Land of Lincoln Credit Union. Claimant informed Detective Young that he had two pounds of cannabis in his house that was packaged and divided into two packages—one package weighing approximately 400 grams and a second package weighing slightly less. Claimant stated that for approximately three to four years, he purchased one to two pounds of cannabis a month for approximately $1,200 per pound and then sold the cannabis for $15 per gram. Based on claimant's interview, police determined that one pound of cannabis equated to approximately 450 grams. If claimant sold each gram for $15, he earned approximately $5,600 per pound or $11,000 for two pounds per month. Claimant also

5

informed Detective Young that he was unemployed and that his SSI payments stopped after he received his settlement money.

¶ 12    Following Detective Young's testimony, claimant's attorney moved for a directed finding to dismiss the State's complaint for forfeiture, arguing that the State failed to show that "any funds of [$]125,000 we're talking about, plus the other, is connected with the sale or production of cannabis." In response, the State argued that the evidence showed claimant's extensive activities as a drug dealer were tied to the use of the funds from the settlement money. Specifically, the State highlighted that Detective Ramey's testimony showed that claimant made several large cash withdrawals within six months of depositing the settlement money into the new account, stating: "What was originally given as a $294,000 cut from the settlement had been reduced down to just over $100,000." The State proceeded to state:

> "And, again, just over six months, the massive number of cash withdrawals, the [claimant]'s confessed activities as a prolific drug dealer in Decatur, I do believe establishes even at least a *prima facie* case. If not a *prima facie*, then by a preponderance of the evidence that [claimant] was using the money from the settlement to fund his cannabis purchases and ultimate dealing and profiting from cannabis sales. So I do believe there is not just a nexus but a direct relationship."

The trial court subsequently ruled that the State established a *prima facie* case, stating: "I have listened to the testimony. There is evidence that [claimant] was dealing cannabis, that he was using money from that account to purchase the cannabis." Claimant then testified on his own behalf.

¶ 13    Claimant testified that he was currently serving time for the offense of armed habitual criminal in the Illinois Department of Corrections. Claimant testified that it was "untrue" that he made $11,000 a month selling cannabis, testifying that he "never profited from cannabis sales."

6

Instead, he stated that he smoked cannabis and partied because he had a lot of friends. He testified that he was a confidential informant from 2013 to 2015 after police raided his home in 2013 during a drug investigation. As a confidential informant, he "would give people marijuana and make them comfortable and [he] would see the traffic of drug deals. *** People thought [he] was selling large quantities of weed, but [he] wasn't." Claimant testified that he had two to three ounces of cannabis on him when he "would give people weed." Claimant denied spending his settlement money to purchase cannabis. Instead, after he received his settlement money, he used the money to purchase his home and renovate the bathroom, kitchen, and flooring. According to claimant, he also gifted $4,500 to each of his five aunts and one uncle and then gifted $2,500 to each of his 10 nieces and nephews. Claimant testified that he purchased cannabis with his SSI payments. He testified that he served time for nine months in 2014 and received his SSI payments during that time, totaling $4,800, which he used to buy cannabis. Claimant also testified that he "inflated [his] story" to police when questioned in October 2015 "to let them give [him] a chance to *** continue to be a [confidential informant] so I can contest this forfeiture."

¶ 14     On cross-examination, claimant acknowledged that police found two pounds of cannabis in his home on October 5, 2015. Claimant, however, testified that he "just g[a]v[e] weed away" and did not sell it for profit. Claimant testified that he lied to Detective Young about how much cannabis he bought and sold on a monthly basis "so [he] c[ould] *** contest the forfeiture." Claimant also testified that he hired individuals at a shelter in Decatur to complete his home renovations. He did not know these individuals' names and claimed they overcharged him. Claimant acknowledged that his family, including his aunts, uncles, nieces, and nephews, did not provide affidavits or testimony concerning the financial gifts that he provided them with his settlement money.

7

¶ 15    Claimant next testified, and exhibits demonstrated, that he received five SSI payments of $674 from July to December 2011; nine SSI payments of $698 from February to November 2012; 12 payments of $710 from December 2012 to November 2013; seven payments of $721 from December 2013 to July 2014; two payments of $480.67 in August and September 2014; one payment of $408.57 in October 2014; and his last SSI payment of $495.19 in January 2015. Claimant testified that he never purchased cannabis with his settlement money but used his SSI funds to purchase the two pounds of cannabis that police discovered in October 2015. Claimant testified that he served time in jail from May to December 2014, at which time he saved his SSI payments totaling roughly $4,800. Claimant then testified that he "saved up all of [his] [supplemental] security to purchase that amount of cannabis that was left in [his] house *** nine months after [his] settlement had been received." Following claimant's testimony, the parties presented closing arguments.

¶ 16    Following closing arguments, the trial court ordered the State to return the 2006 Chevrolet Corvette, finding that claimant purchased the vehicle with legitimate money from the settlement money. The court next ordered the "$4,302.81 that was found with the [two pounds of] cannabis" forfeited,[1] as this money was found in close proximity to the cannabis, establishing a sufficient nexus. The court next ordered forfeited the "$100,000 that is still left" in claimant's Land of Lincoln Credit Union account.[2] The court acknowledged that the money in claimant's Land of Lincoln Credit Union account was from a legitimate personal injury settlement and that the court "understood" claimant's argument that he was untruthful with officers because he wanted police "to keep using him as a confidential source" and "wanted to be out for a deposition [for his medical

---

[1]Police found and seized approximately $3,755 on October 5, 2015, which included money found next to the cannabis (valued at $3,000) and U.S. currency on claimant's person ($755).
[2]The amount actually forfeited from claimant's Land of Lincoln Credit Union account totaled $100,352.61.

8

malpractice suit]." The court, however, found claimant's testimony incredible, where he testified that he purchased two pounds of cannabis for personal use. The court, considering the officers' testimonies, found it more credible that claimant, a convicted felon, purchased and sold cannabis with his settlement money—his only form of income—stating: "It doesn't make any sense if somebody would have a couple pounds of cannabis in their house for personal consumption." As such, the court ultimately determined that the State established a sufficient nexus to the settlement money. Accordingly, the court ordered forfeited the remaining settlement money in the Land of Lincoln Credit Union account. The court entered a written order on November 22, 2022, seizing as forfeiture property approximately $3,755 found near cannabis and on claimant's person at the time of the search of claimant's residence and $100,352.61 contained in claimant's bank account at Land of Lincoln Credit Union.

¶ 17 On December 2, 2022, claimant filed a posttrial motion, arguing that the State failed to prove that all of the $100,352.61 was used to fund criminal purposes, thus, no criminal nexus existed to support the seizure of this money from claimant. Moreover, claimant contended that the court's judgment was against the manifest weight of the evidence and that the court imposed an excessive fine.

¶ 18 On March 2, 2023, the trial court held a hearing on claimant's posttrial motion. In denying claimant's motion, the court stated that claimant "did have money that was from a legitimate means that [he] put into a bank account, but as the evidence was presented [claimant] was selling cannabis." The court found that claimant took "money out from that bank account in this situation" to purchase cannabis. As such, the court determined that the State sustained its burden of establishing a nexus between the bank account and illegal drug activity. Claimant filed a timely notice of appeal.

9

¶ 19                                    II. Analysis

¶ 20    Claimant's sole argument on appeal centers on whether the trial court erred by ordering

forfeited $100,352.61 of U.S. currency from his Land of Lincoln Credit Union account.

Specifically, claimant argues that no nexus existed between his settlement money and the alleged

criminal drug activity, given the $100,352.61 was not found in close proximity to drugs and

claimant's "unrefuted and corroborated testimony regarding the money was that he used it to buy

a car, a house, gifts to his mom, gifts to his family, and repairs to the house." In response, the State

argues that the court's findings of probable cause and its forfeiture order were not against the

manifest weight of the evidence, where the evidence established a probability or substantial chance

of a nexus between the settlement money in claimant's bank account and the sale of cannabis. We

agree with the State.

¶ 21    The provisions set forth in the Forfeiture Act apply to all property forfeitable under, among

other statutes, the Cannabis Control Act. See 725 ILCS 150/3 (West 2022). The Cannabis Control

Act provides, in relevant part, that "everything of value furnished or intended to be furnished by

any person in exchange for a substance in violation of this Act" is subject to forfeiture. 720 ILCS

550/12(a)(5) (West 2022). It is a violation of the Cannabis Control Act "for any person knowingly

to manufacture, deliver, or possess with intent to deliver, or manufacture, cannabis." *Id.* § 5.

Where, as here, the State seized property under the provisions of the Cannabis Control Act and a

claimant asserted a claim against the seized property, the Forfeiture Act sets forth a specific judicial

*in rem* procedure that must be followed before the property may be forfeited to the State. See 725

ILCS 150/9 (West 2022). The State must prove its right to the items by a preponderance of the

evidence, and the trial court's decision will be upheld unless contrary to law or the manifest weight

of the evidence. *People v. Ziomek*, 179 Ill. App. 3d 303, 306 (1989).

¶ 22    A proceeding under the Forfeiture Act involves a two-step process. *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur*, 217 Ill. 2d 481, 498 (2005) (*1945 North 31st Street*). First, the State has the initial burden of demonstrating probable cause for forfeiture of money recovered from illegal drug activities. *Id.* To satisfy the probable cause requirement, the State need only show a probability or substantial chance of a nexus between the currency and illegal drug activities. *Id.* at 505. The State may have less than *prima facie* proof, but more than a mere suspicion that a nexus exists to establish probable cause. *Id.* "[T]he government's evidence need not exclude other plausible hypotheses of the source of the money" (*id.*), and the State need not tie the money to a specific drug transaction (*People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van,* 177 Ill. 2d 314, 336 (1997)). Instead, it is the totality of the circumstances that leads to a finding of probable cause. *1945 North 31st Street*, 217 Ill. 2d at 505. If the State satisfies its burden, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture. *Id.*

¶ 23    There are two categories of contraband. *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d 114, 118 (1987) (*$53,263 U.S. Currency*). "Contraband *per se* are items the possession for which alone constitutes a criminal offense, *i.e.*, certain narcotics and counterfeit money." *Id.* "Derivative contraband are articles which are not inherently illegal, but which have been or are used in an unlawful manner." *Id.* (citing *People v. Steskal*, 55 Ill. 2d 157, 159 (1973)). " 'Derivative contraband' consists of property which is innocent in itself but which has been used in the perpetration of an unlawful act, *e.g.*, *** cash derived from the sale of illegal drugs." *Ziomek*, 179 Ill. App. 3d at 307; see also *$53,263 U.S. Currency*, 159 Ill. App. 3d at 116.

¶ 24    Here, based on the totality of the circumstances, the State established a sufficient nexus between the illegal drug activities and the seized settlement money. Detective Ramey, an expert

11

in the distribution of cannabis and narcotics, testified that he believed, given the large quantities of cannabis in claimant's possession, that claimant possessed cannabis with intent to distribute. Detective Hesse testified that the search of the vacant property and claimant's residence revealed several items that indicated claimant's involvement in distributing cannabis, including large amounts of drugs, weapons, and heat-sealed packaging, which "drug dealers [use] for transportation" or to "mask the odor." In addition, Detectives Ramey and Young testified that claimant admitted to purchasing one to two pounds of cannabis a month for approximately $1,200 per pound that claimant then sold for $15 per gram. According to Detective Ramey, police seized "just shy of two pounds [on October 5, 2015], which goes hand in hand with [claimant's] own statements." Detective Young testified that claimant's monthly cannabis supply, sold at $15 per gram, yielded him a profit of $5,600 per pound or $11,000 for two pounds. Claimant, however, testified before the court that it was "untrue" that he made $11,000 a month selling cannabis because he "never profited from cannabis sales." Instead, claimant testified that he purchased cannabis for his own personal use and noted that he partied with "a lot of friends." The court found claimant's testimony incredible.

¶ 25 Since the State showed probable cause, the burden shifted to claimant to show by a preponderance of the evidence that his interest in the currency was not subject to forfeiture. In granting the State's complaint for forfeiture, the trial court acknowledged that the money was from a legitimate settlement and that the court "understood" claimant's argument that he lied to police because he wanted police "to keep using him as a confidential source" and "to be out for a deposition [for his medical malpractice suit]." However, the court found claimant's testimony not credible, where he testified that he purchased two pounds of cannabis for personal use and "saved up all of [his] [supplemental] security to purchase that amount of cannabis that was left in [his]

12

house \*\*\* nine months after [his] settlement had been received." Instead, the court found the officers' testimonies more credible than claimant, a convicted felon on federal parole for a narcotics-related offense and known drug dealer, and determined that the evidence supported a finding that claimant purchased and sold cannabis with the settlement money, stating: "It doesn't make any sense if somebody would have a couple pounds of cannabis in their house for personal consumption."

¶ 26    Despite his testimony at trial that he never profited from selling cannabis, claimant now argues on appeal that the State's own evidence established that he never needed to use his settlement money to purchase cannabis because he "was making more than enough profit per month from his sales alone to finance continued purchases of cannabis just as he had from 2011 through 2014 before he received the settlement funds." Although this could have been true prior to his receipt of the settlement money, the evidence supported an inference that claimant made numerous cash withdrawals from his new account to facilitate his cannabis business, especially since claimant testified that he was unemployed and had no income after he received his settlement money. As such, evidence supported a finding that claimant used funds from his settlement money to purchase cannabis and that he would continue to use funds from that account for future drug-related transactions.

¶ 27    Claimant argues, with reliance on *$53,263 U.S. Currency*, 159 Ill. App. 3d at 115, that the State failed to prove intent to use the funds for a purpose in violation of the Cannabis Control Act, where his unrefuted and corroborated testimony demonstrated that the settlement money was not in itself derivative contraband. However, dissimilar to the case at hand, the claimant in *$53,263 U.S. Currency*, 159 Ill. App. 3d at 116, corroborated his testimony that he borrowed $50,000 from NCS Financial Services for repairs to his business. In particular, the claimant in *$53,263 U.S.*

13

*Currency*, stated that he received the $50,000 in cash and then placed the cash in a safe. *Id.* To support his testimony, the claimant provided the court with a copy of the $50,000 promissory note, payable to NCS Financial Services. *Id.* The claimant also testified that he advanced $3,000 of the borrowed money for construction costs. *Id.* at 117. To support his testimony, the claimant provided the court with copies of three checks payable for the construction. *Id.* The appellate court ultimately determined that the seized money in the claimant's safe was not used or intended to be used in violation of the Cannabis Control Act, finding that no evidence existed that the claimant sold or delivered drugs, that the claimant was a drug dealer, possessed the seized drugs, or that the money in the safe was used in any criminal activity. *Id.* at 119. In so ruling, the court determined that the claimant substantiated his testimony with documents to refute the statutory presumption that the money, which was in close proximity to seized drugs, was used for an illegal narcotic purpose. *Id.* at 125.

¶ 28     Here, however, despite claimant's innocent explanations for the multiple cash withdrawals from the new account, he failed to establish that his interest in the currency was not subject to forfeiture. Claimant testified that he gifted $52,000 to family members, including $4,500 to six aunts and one uncle and $2,500 to 10 nieces and nephews. However, not a single recipient provided an affidavit or testimony concerning the financial gifts provided by claimant. Moreover, claimant also testified that he used the cash withdrawals to renovate his home. He, however, did not know the names of the individuals who he hired to complete the work, and he did not provide any receipts or proof of payment. Contrary to claimant's argument on appeal, his testimony was in fact uncorroborated, thus, the court could have determined his testimony incredible in this regard when the court determined that the State established a sufficient nexus between the settlement money and the seized cannabis.

¶ 29   Accordingly, although the money at issue was in a bank account and not in close proximity to the cannabis, the State effectively showed a probability or substantial chance of a nexus between the currency and illegal drug activity. As detailed above, because the trial court did not believe claimant's testimony, claimant failed to prove that the currency was not subject to forfeiture. Thus, we cannot conclude that the court's decision ordering the settlement money forfeited was against the manifest weight of the evidence.

¶ 30                                    III. Conclusion

¶ 31   For the reasons stated, we affirm the judgment of the Macon County circuit court.


¶ 32   Affirmed.